No. 100,666

MELVIN HOLMES, *Appellant,* v. STATE OF KANSAS, *Appellee.*
(252 P.3d 573)

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 14, 2009. Opinion filed June 10, 2011.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.: This case arises out of the district court's denial of Melvin Holmes' motion for postconviction relief under K.S.A. 60-1507 without conducting an evidentiary hearing on his claims of ineffective assistance of appellate counsel. The Court of Appeals affirmed. We granted Holmes' petition for review; our jurisdiction is under K.S.A. 20-3018(b).

We hold the district court erred in denying Holmes' 60-1507 motion without conducting an evidentiary hearing. Consequently, we reverse the decisions of the Court of Appeals and district court and remand to the district court for an evidentiary hearing.

## FACTS

In 1999, a jury convicted Melvin Holmes of first-degree murder of his girlfriend and criminal possession of a firearm. He received a hard 40 sentence, but this court reversed and remanded for a new trial because of prosecutorial misconduct at trial. *State v. Holmes*, 272 Kan. 491, 33 P.3d 856 (2001) (*Holmes I*).

In 2002, a second jury convicted Holmes of the same offenses, rejecting the lesser included offenses of first-degree murder for which they were also instructed: intentional second-degree murder, unintentional second-degree murder, voluntary manslaughter,

and involuntary manslaughter. He again received a hard 40 sentence. We affirmed his convictions but vacated the sentence and remanded for resentencing because of insufficient evidence of aggravating circumstances to support the hard 40 sentence. *State v. Holmes*, 278 Kan. 603, 102 P.3d 406 (2004) (*Holmes II*).

On remand, the district court imposed a hard 25 sentence, which we affirmed in *State v. Holmes*, No. 95,085, 2006 WL 3056732 (2006) (unpublished opinion).

On October 26, 2007, Holmes filed a 203-page pro se motion for postconviction relief under K.S.A. 60-1507. The motion raised several issues, including: (1) prosecutorial misconduct; (2) ineffective assistance of appellate counsel during the direct appeal challenging his convictions in 2004 (*Holmes II*); (3) judicial misconduct during trial; (4) an issue regarding jury selection; and (5) a claim of innocence.

After a preliminary, but nonevidentiary, hearing attended by counsel for Holmes and the State, the district court denied Holmes' 60-1507 motion. The judge stated:

"Court agrees with the State. The Court finds the motions, files, and record conclusively show the movant is not entitled to relief requested. Case will be dismissed for the grounds set forth in the State's response. The Court will adopt as its opinion the response of the State. That will be the order of the Court."

Holmes appealed. While his 60-1507 motion had raised several issues, he only appealed the effectiveness of his appellate counsel in *Holmes II*. More specifically, Holmes contended appellate counsel had failed to: (1) raise the issue of ineffective trial counsel; (2) include a videotape and accompanying transcript in the appellate record ; and (3) file a reply brief or motion for reconsideration.

The Court of Appeals panel affirmed the district court's decision denying Holmes an evidentiary hearing. *Holmes v. State*, No. 100,666, 2009 WL 2501114 (2009) (unpublished opinion) (*Holmes III*). We granted Holmes' petition for review that requested our examination of only points one and two presented to the Court of Appeals.

More facts will be added as necessary to the analysis.

### ANALYSIS

Issue: *The district court erred in denying Holmes' 60-1507 motion without conducting an evidentiary hearing.*

Holmes challenges the district court's failure to hold an evidentiary hearing, while the State responds that two of his three allegations of ineffective assistance of appellate counsel are without merit, and the third was resolved in *Holmes II.*

*Standard of Review*

Holmes contends that the district court summarily denied his 60-1507 motion. However, he then correctly cites the standard for reviewing a preliminary hearing on a 60-1507 motion as was conducted here. "An appellate court must give deference to any factual findings made by the district court as a result of the [preliminary] hearing" and "it must apply a findings of fact and conclusions of law standard of review to determine whether the findings are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law. [Citation omitted.]" *Bellamy v. State,* 285 Kan. 346, 354, 172 P.3d 10 (2007). We agree with the application of that standard here.

*Discussion*

We begin our review by acknowledging that " ' "a movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." ' [Citations omitted.] If a movant satisfies that burden, the court is required to grant a hearing, unless the motion is 'second' or 'successive' and seeks similar relief." *Holt v. State,* 290 Kan. 491, 495, 232 P.3d 848 (2010).

For Holmes to be successful in asserting that he was denied effective assistance of appellate counsel in *Holmes II,* he must show that (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness and (2) he was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. *Baker v. State,* 243 Kan. 1, Syl. ¶ 2, 755 P.2d 493 (1988); see *Laymon v. State,* 280 Kan. 430, 437, 122 P.3d 326 (2005).

Our review of alleged ineffectiveness is also steered, in part, by the guidance provided in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985):

"Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

See *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

With this in mind, we turn to address Holmes' three separate claims of ineffective appellate counsel.

### Failure to Challenge Effectiveness of Trial Counsel

Holmes claims appellate counsel in *Holmes II* was ineffective because he failed to challenge the strategy of Holmes' trial counsel. More specifically, Holmes argues that his trial counsel was ineffective by failing to advance a "non-guilt based defense," and appellate counsel himself was ineffective by failing to brief this issue on direct appeal.

Holmes' argument requires a review of the material facts. As we explained in *Holmes I* and *II*, Holmes and his girlfriend, Glenda Smith, spent March 6, 1999, together in Smith's home. Holmes did heroin and cocaine and smoked crack in the home, while Smith injected cocaine. Because of the drugs, Smith showed signs of paranoia, looking out the window and holding a knife. While they were later in bed, Smith began to nag Holmes. Because Holmes knew she had previously armed herself when paranoid, and fearing what she might now do, he hit her in the head with a hammer. She jumped screaming from the bed and grabbed her handgun.

As they struggled for control of the gun, the fight moved to the hallway. As one of them pulled the trigger, the gun clicked several times but did not discharge. Holmes pushed Smith to the floor and held her with a knee against her chest. The gun was pointed at her chest. She continued to fight, with both her hands and one of Holmes' on the gun. He threatened that he "could" or "would" kill her. She continued to fight when the gun fired, propelling a bullet

into her heart. The entry was a "contact wound," indicating the gun had been against Smith's skin when it discharged.

Believing Smith was dead, Holmes immediately went into the bathroom and injected a combination of cocaine and heroin. Because he was going to jail, "he figured, what the hell, he would go ahead and finish up the drugs." 272 Kan. at 493. He then went into a drug-induced seizure. When he recovered the morning of March 7, he called 911 and told the dispatcher that "he had shot his girlfriend." 272 Kan. at 493. Holmes told both the police and the jury the shooting was an accident.

Holmes' counsel's arguments during his closing included characterizing the shooting as accidental. An accident is certainly a complete defense to the crimes of first-degree murder, intentional second-degree murder, and voluntary manslaughter because all three require the killing be done "intentionally," which is defined as conduct that is purposeful and willful *and not accidental*. See PIK Crim. 3d 56.04(d). Accordingly, contrary to Holmes' present appellate argument, a nonguilt-based defense was raised for three of the murder-based charges sent to the jury for decision. *Cf. State v. Carter*, 270 Kan. 426, 440-41,14 P.3d 1138 (2000) (defense counsel's argument—that defendant's shooting and killing the victim as an incident to the robbery, rather than a premeditated act, constitutes felony murder—is a guilt-based defense to premeditated first-degree murder). Holmes' trial counsel additionally argued Holmes' drug use negated the elements of premeditation and intent required for first-degree murder. At his request, the jury was instructed on voluntary intoxication. Voluntary intoxication, while not a complete defense, may also be used to negate the intent element of specific intent crimes such as first-degree murder. *State v. Sappington*, 285 Kan. 158, 164, 169 P.3d 1096 (2007).

Holmes' trial counsel also argued during his closing that Holmes was justified in using deadly force because he acted in self-defense. Similarly, the jury received four different instructions concerning self-defense. Under the version of K.S.A. 21-3211 in effect when the shooting occurred, self-defense was a complete defense to all the homicide charges. See *State v. Walters*, 284 Kan. 1, 8-9, 159 P.3d 174 (2007). In sum, Holmes' trial counsel advanced alterna-

tive theories of defense: complete defenses that absolved Holmes of responsibility for any crime and incomplete defenses that negated certain elements of the crimes while still subjecting Holmes to liability for their lesser-included offenses.

Given the conflicting facts surrounding the fatal shooting, we are unable to hold that trial counsel's use of alternative theories of defense—guilt based and nonguilt-based—fell below an objective standard of reasonable performance to meet the first prong of the test for ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Chamberlain*, 236 Kan. at 656-57, (adopting *Strickland* standards); see also *State v. White*, 284 Kan. 333, 349-50, 161 P.3d 208 (2007) (alternative theories of defense permitted, even if they are incompatible). Because under our highly deferential scrutiny we conclude Holmes' trial counsel employed a justifiable strategy, it follows that Holmes' appellate counsel cannot be ineffective for failing to challenge that sound strategy on direct appeal.

*Failure to Include the Videotape and Transcript in the Record on Appeal*

Holmes also argues his appellate counsel was ineffective for failing to include a videotape of his police statement and its transcript in the record on appeal to support his claim that they were erroneously admitted into evidence. The State generally responds that our decision in *Holmes II* disposes of his claim.

When police officers initially met with Holmes in 1999, they videotaped his interview. A transcript was later prepared from the audio portion. Holmes' trial counsel was concerned about those materials showing "Holmes' prior criminal record, prior bad acts, personal history, and activity not directly related to this case" and therefore filed a motion in limine requesting this information "be redacted from the videotape and transcript." *Holmes II*, 278 Kan. at 623. The motion alleged that "if made known to the jury, it would be prejudicial and error. Moreover, the prejudice and harm could not be erased by the court sustaining an objection and or instructing the jury to disregard it." Before the 2002 trial, the parties worked together to edit and redact.

At trial, the State first offered into evidence the unredacted video and unredacted transcript of the video "so that someone [on appeal] can see what has been left out" by comparing the unredacted video and transcript with the redacted versions. After the defense did not object, the court admitted them into evidence "for this very limited purpose."

The State also moved to admit the redacted video and transcript, to play the redacted video for the jury, and to provide it a copy of the redacted transcript to follow along. Holmes' counsel generally renewed his multiple pretrial objections to the playing of the video or showing the transcript to the jury. He also now specifically objected because he had not yet viewed all of the redacted video and wanted to ensure the State would only play the fully redacted version for the jury. The court initially reserved ruling on their admission:

"MS. LADNER: I would move at this time for the admission of 50 [redacted videotape] and 51 [redacted transcript].

"MR. MANK: I'm going to object to their admission at this time until after they're played. And I'm, also, going to object based upon the prior ruling of the court as to 50 and 51.

"THE COURT: I'll reserve ruling until the tape is—you're prepared to show the tape to make sure that it is the appropriate tape. If it is, then the tape will be admitted.

"As to the transcript. I'll reserve ruling on admitting the transcript as evidence.
. . . .

"MS. LADNER: At this point, Judge, I'm ready to play the tape, but I'm not sure about what counsel's objection is or what the Court's ruling is on that?

"THE COURT: The only thing is to verify that it is, in fact, the correct tape.

"MR. MANK: That's correct.

"THE COURT: And that is my ruling on the tape.

"MR. MANK: Well, judge, my—the other motion I'm making, Judge, goes— or the other objection I'm making goes to the prior ruling of the Court after the evidentiary hearing.
. . . .

"MR. MANK: Okay. Judge, perhaps I didn't make myself clear. The objection I was making was to the admissibility of the statement in its entirety.
. . . .

"MR. MANK: So I'm simply making the objection to preserve the issue for appeal."

"From a brief view of the tape," the court believed it was the correct tape and admitted it into evidence. It was then played for the jury. Due to the tape's poor audio quality, the court permitted the jury to follow along with a redacted transcript, which was never admitted into evidence.

Holmes complained in his pro se brief in *Holmes II* that the trial court erred "in admitting certain evidence, particularly the confession of the defendant without *proper* redaction," and "[t]he record shows that the Court allowed evidence to be given to the jury that needed to be edited first." (Emphasis added.) His contention is broad enough to include both videotape and transcript evidence. *Cf. State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010) (pro se pleadings are liberally construed).

This general complaint in Holmes' pro se brief is supported by the record and preserved for appeal. More specifically, the record reveals that some of the material Holmes' trial counsel had sought to have redacted was not; it was provided to the jury. After the tape finished playing for the jury, defense counsel stated:

> "Judge, if I may, I'd like to make a record of a conversation that we had back in your waiting area regarding the videotape that was played. *Despite our best efforts, there were some parts of the tape that were not edited correctly as [the prosecutor] and I had agreed to. And I do not want to direct attention to it, but that was the reason why I objected to it being admitted without watching it.* The Court informed us that [it] would not play the videotape or . . . give a copy of the transcript to the jury without playing [the videotape] in the courtroom if [the jury] requested that. . . . [I]t was my understanding in our conversation that we would have the opportunity to redact or edit any portion that would be presented to [the jury] so that it conformed with the Court's previous order. *And, also, as a result of the videotape, we are requesting . . . the [K.S.A. 60-455] other crimes evidence PIK instruction.*" (Emphasis added.)

The State agreed that giving the jury a limiting instruction under K.S.A. 60-455 would be appropriate. However, after the later jury instruction conference, defense counsel withdrew his request for a limiting instruction. He reasoned that "it brings too much attention to something that the Court had previously ruled was inadmissible. I do not want to direct the attention of the jury to those items that were brought up on the tape that should not have been."

The court ruled that if the instruction was not requested, it would not be given.

This less-than-fully redacted version of the video shown to the jury, which was admitted into evidence, was not included in the record on appeal in *Holmes II*. The redacted transcript used by the jury but not admitted into evidence was also not included in the record on appeal. We stated that our review of whether the trial court had erred in its treatment of the video and transcript was therefore difficult, if not impossible:

"The major problem in reviewing this issue is that Holmes has failed to include the videotape or the transcript in the record on appeal. Without these items, it is virtually impossible to fully assess Holmes' claims. The appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. *State v. Decker*, 275 Kan. 502, 507, 66 P.3d 915 (2003). Moreover, review of the evidence in the record does not support Holmes' position." *Holmes II*, 278 Kan. at 625.

The State now relies upon this language to contend our *Holmes II* decision disposes of this claim of ineffective assistance of appellate counsel and consequently eliminates any need for an evidentiary hearing on it. For the reasons discussed below, we disagree.

We have long held that appointed counsel's duty to an indigent client is basically the same as that owed to any client. See, *e.g., In re Phelps*, 204 Kan. 16, 19, 459 P.2d 172 (1969), *cert. denied* 397 U.S. 916 (1970); *State v. Blockyou*, 195 Kan. 405, 407 P.2d 519 (1965). We acknowledge, however, that an attorney has no duty to assert on appeal every alleged error. As we stated in *Baker*, 243 Kan. 1, Syl. ¶ 5:

"In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit."

See *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); *Moncla v. State*, 285 Kan. 826, 832, 176 P.3d

954 (2008) ("We give wide deference to counsel in deciding what issues should be asserted on appeal.").

Consequently, when a client files additional pro se briefs with a court, the attorney must exercise reasonable professional judgment to eliminate those issues that do not merit review. For those pro se claims that have not been eliminated and are raised on appeal, counsel has the responsibility to provide a record on appeal sufficient to support them. See *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, Syl. ¶ 7, 221 P.3d 588 (2009) ("The responsibility for providing a record on appeal sufficient to support a party's argument belongs to that party.").

Here, the videotape and transcript clearly were not provided in support of Holmes' appellate claim that the trial court erred in allowing them to be considered by the jury. Holmes has therefore taken the first steps toward establishing ineffective assistance of appellate counsel. Nor is there anything in the record to indicate whether the items were omitted because appellate counsel determined as a matter of strategy that the claim they referenced was unworthy of pursuit or instead the result of inadvertent error. Lack of strategic choice is a further step for Holmes to make in establishing his ineffective assistance of appellate counsel claim. See *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004) (strategic choices made after counsel's thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation); *State v. Tucker*, 253 Kan. 38, 46, 853 P.2d 17 (1993) (counsel is entitled to make strategic choices).

Before proceeding with our analysis, however, several of our statements in *Holmes II* require addressing. First, our statement that "Holmes has failed to include the videotape or the transcript in the record on appeal" was meant to be a reference to Holmes as the party represented by counsel and not Holmes as a person. See 278 Kan. at 625. Consequently, contrary to the State's suggestion, we did not determine that Holmes individually was responsible for including these items on appeal and, by implication, there-

fore relieve his appellate counsel of the professional responsibility to the client.

Second, in holding the trial court did not err, we stated: "[T]he parties agreed to remedy the portions not edited correctly with a K.S.A. 60-455 limiting instruction. The jury would have been exposed to the videotape with or without the transcript. Using the transcript would not have changed the result of the trial." 278 Kan. at 625. Despite this language and others referencing the agreement between the parties and the court to a limiting instruction (278 Kan. at 625) and also language referencing the State's argument that "any potentially prejudicial material from the videotape was cured by issuing the jury instruction for prior other crimes evidence" (278 Kan. at 625), no such instruction was actually given at trial. According to our review of the record, the trial court ruled one would not be given after defense counsel withdrew his request, and none appears in the instructions eventually provided to the jury. As a result, the Court of Appeals panel was mistaken in the present appeal—although somewhat justifiably—when it concluded: "The Supreme Court stressed that a limiting instruction *was* given to remedy any portions of the tape that were not edited properly." (Emphasis added.) *Holmes III*, 2009 WL 250114, at *2. Moreover, despite this *Holmes II* language focusing on the trial court's handling of only the transcript, Holmes' pro se brief also complains about the handling of the videotape. Consequently, in this particular 60-1507 appeal, we do not determine whether the use of a specific transcript alone would "have changed the trial result." 278 Kan. at 625.

Finally, and most important to our analysis, no versions of any videotapes or transcripts have been included in the record on appeal. Holmes' appellate counsel did not include the unredacted video and unredacted transcript that were admitted into evidence for apparent appellate purposes. Nor did he include the less-than-fully redacted video and transcript that were shown to the jury. Without any of these materials, we cannot know exactly what parts of "Holmes' prior criminal record, prior bad acts, personal history, and activity not directly related to this case" that his counsel, the State, and the court all agreed, but failed, to keep from the jury.

As a result, on this record we cannot agree with the State. More specifically, we cannot agree that even if appellate counsel deficiently performed, that Holmes was not prejudiced to the extent there is a reasonable probability that, but for counsel's failing to supply the videotape and transcript on appeal, Holmes' appeal would have been successful. See *Baker*, 243 Kan. 1, Syl. ¶ 2. *Cf. Rowland v. State*, 289 Kan. 1076, 1086, 219 P.3d 1212 (2009) (until record available containing information necessary to determine whether counsel made informed choice or ignorant mistake, no tribunal should have decided the merits of the ineffective assistance of counsel issue as a whole and as a matter of law).

In conclusion, we hold that the district court erred in dismissing, without an evidentiary hearing, Holmes' claim under K.S.A. 60-1507 that his appellate counsel was ineffective in failing to include the videotape and transcript in the record on appeal in *Holmes II*. Accordingly, this particular issue is remanded to the district court for an evidentiary hearing.

The district court should first inquire whether appellate counsel intentionally chose not to pursue the issue—and thus chose to not provide it support in the record on appeal—as a matter of strategy or otherwise. See *Moncla*, 285 Kan. at 832 (appellate court gives wider deference to counsel in deciding what issues should be asserted on appeal). But see *Rowland*, 289 Kan. at 1086 (strategy cannot be automatically assumed; court must determine whether defense counsel made an informed choice or an ignorant mistake).

If the hearing establishes deficient appellate counsel performance, the 60-1507 court should proceed to the prejudice prong. More specifically, the court should determine whether Holmes was prejudiced to the extent there is a reasonable probability that, but for counsel's failing to supply the videotape and transcript on appeal, Holmes' appeal would have been successful. See *Baker*, 243 Kan. 1, Syl. ¶ 2; *Rowland*, 289 Kan. at 1083.

When making this prejudice determination, the 60-1507 court may examine whether the trial court had indeed erred in permitting the tape and transcript to be provided to the jury. If there was no trial error, or if it was harmless, then it follows that appellate counsel's failure to supply those materials in the record on appeal

to support the claimed error cannot be prejudicial. While we ruled in *Holmes II* that the trial court did not so err, we have now explained that our ruling was based upon counsel's failure to provide the materials for our review. We have also explained that our ruling was additionally based upon facts as represented in the parties' briefs, not those actually contained in the record, which our careful review has now revealed.

*Failure to File a Reply Brief or Motion for Reconsideration*

Holmes argued to the Court of Appeals panel that his appellate counsel was ineffective by failing to file a reply brief and a motion for reconsideration after our decision in *Holmes II*. When the panel rejected this point, Holmes did not present it for our potential analysis when he filed his petition for review. Accordingly, it has not been preserved for review. See Supreme Court Rule 8.03(a)(5)(c) and (g)(1) (2010 Kan. Ct. R. Annot. 69). Even if this point had been preserved, we hold it has no merit, primarily for the reasons provided by the panel. *Holmes III*, 2009 WL 2501114, at *2.

Reversed and remanded with directions for an evidentiary hearing on the videotape and transcript issue.

JAMES A. PATTON, District Judge, assigned.