NOT DESIGNATED FOR PUBLICATION

No. 115,096

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID TAYLOR WEBSTER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Cowley District Court; NICHOLAS M. ST. PETER, judge. Opinion filed June 16, 2017. Affirmed.

*Ian T. Otte*, of Herlocker, Roberts & Herlocker, L.L.C., of Winfield, for appellant.

*Christopher E. Smith*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., ATCHESON and BRUNS, JJ.


*Per Curiam*:  After an evidentiary hearing, the Cowley County District Court denied David Taylor Webster's habeas corpus challenge to his conviction for intentional second-degree murder, finding his lawyer competently represented him in the criminal jury trial. The district court found that the lawyer representing Taylor made a reasonable tactical decision in advising Webster not to testify to a self-defense scenario that conflicted with an earlier account of the incident he had given law enforcement officers. During the trial, Webster agreed with that advice and chose not to testify. Webster now contends he received constitutionally deficient legal representation during the trial as a

1

result. As we explain, we disagree and, therefore, affirm the district court's ruling denying Webster relief under K.S.A. 60-1507.

In late March 2009, Webster argued with his live-in girlfriend at their home. Their argument became heated. Webster struck the woman and strangled her to death. He then hid the body at another location. At the insistence of his girlfriend's adult daughter, Webster made a missing person's report with the local police the next day. The officer taking the report questioned that version of events because he saw the woman's purse, keys, and car at the residence.

Alerted that Webster and his girlfriend had been upset with each other, a detective then spoke with Webster. Webster initially told the detective that he and his girlfriend argued and made up. He said he had no idea where his girlfriend had gone. A short time later, Webster called the detective to set up another meeting. At that meeting, Webster told the detective his girlfriend had physically attacked him, furiously punching him and kicking him. According to Webster's account, he "snapped" as he fought back—only to realize after he had regained his senses that he had strangled his girlfriend. Webster then showed law enforcement officers where he had taken the body.

The State charged Webster with intentional first-degree murder. Webster and his court-appointed lawyer later met with the detective and the county attorney. During that meeting, Webster said that his girlfriend had attacked him with a hunting knife and he acted in self-defense.

During the jury trial in January 2010, the prosecutor presented the statement Webster gave the detective shortly after the killing in which he confessed to having snapped while fending off his girlfriend's assault. Webster chose not to testify in his own defense. Outside the presence of the jury at the conclusion of the State's case, the district court informed Webster that he had the right to testify or not and the decision was his to

2

make personally, taking into account his lawyer's advice. The district court also told Webster that if he testified the prosecutor could cross-examine him. Webster asked for time to visit with his lawyer. The jurors had already been excused for lunch, so Webster spoke with his lawyer during that break. Following the recess but before the jurors reassembled in the courtroom, Webster told the district court he did not intend to testify.

The district court instructed the jury on intentional first-degree murder and the lesser offenses of intentional second-degree murder and voluntary manslaughter based upon a killing done in the heat of passion. The jury returned a verdict on the fourth day of trial finding Webster guilty of second-degree murder. At a later hearing, the district court sentenced Webster to serve 285 months in prison. This court affirmed the verdict and sentence on direct appeal. *State v. Webster*, No. 104,908, 2012 WL 2148165 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1136 (2013).

Webster timely filed a motion with the district court for habeas corpus relief, as provided in K.S.A. 60-1507, alleging constitutional defects in the criminal proceedings, including the trial. The district court appointed a new lawyer to represent Webster and in June 2014 held an evidentiary hearing on the motion. Webster and his trial lawyer in the criminal case were the only witnesses at the hearing. On September 23, the district court issued a detailed memorandum opinion denying Webster's 60-1507 motion. Webster has appealed the denial of his motion, and that is what we have before us.

On appeal, Webster contends his trial lawyer provided constitutionally deficient representation by not more vigorously pursuing self-defense during the jury trial. Before analyzing that issue, we set out legal principles guiding review of habeas corpus challenges on appeal.

Procedurally, when the district court conducts an evidentiary hearing, we evaluate the district court's rulings using a bifurcated standard that accords deference to findings

3

of fact supported by substantial evidence and reserves unlimited review of legal conclusions. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015); *Bellamy v. State*, 285 Kan. 346, 353, 354-55, 172 P.3d 10 (2007).

Substantively, a criminal defendant has the right to competent legal representation as guaranteed in the Sixth Amendment to the United States Constitution. A colorable claim of constitutionally inadequate legal representation presents an exceptional circumstance warranting review of a criminal conviction, as provided in K.S.A. 60-1507, even though the defendant has unsuccessfully challenged the conviction on direct appeal. See *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007). To obtain relief under 60-1507, the movant must show his or her representation in the direct criminal case both fell below an objective standard of reasonableness and resulted in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015) (restating *Strickland* test and citing *Chamberlain* in assessing constitutionally inadequate legal representation in context of new trial motion). As the United States Supreme Court and the Kansas Supreme Court have explained, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be treated as substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 690-91.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has

4

been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 111, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014).

The district court accepted the trial lawyer's hearing testimony regarding his representation where there were conflicts with Webster's testimony. We are mindful of that implicit credibility determination and do not tread upon it in our review. Webster's trial lawyer plainly considered and evaluated a self-defense defense and discussed that evaluation with Webster. Ultimately, the lawyer recommended against it, and Webster followed that recommendation, as reflected in his decision not to testify at trial.

The lawyer concluded the jurors would be unlikely to accept Webster's self-defense account in which his girlfriend ostensibly attacked him with a hunting knife. First, the lawyer explained that Webster's self-defense version of the killing obviously conflicted with how he explained the incident to law enforcement officers just after it happened—the hunting-knife scenario emerged only after he had been charged. The prosecutor would undoubtedly exploit such a major inconsistency to undermine Webster's credibility in the eyes of the jurors. The lawyer also thought jurors would reject that account because there was no independent evidence of a hunting knife. None of the photographs of the crime scene showed a knife, and such a weapon wasn't mentioned in any law enforcement reports.

Moreover, killing someone by manual strangulation is difficult to square with self-defense. The mechanism of death takes a considerable amount of time, and the victim is rendered unconscious—and, thus, no longer a threat—well before the continued application of force and loss of oxygen becomes fatal.

Those difficulties undercut an essential factual predicate for Webster's assertion of self-defense or even imperfect self-defense as a form of voluntary manslaughter. That is, the jurors could readily conclude there was no knife, so Webster could not have been attacked with it.

The lawyer believed the stronger defense wove Webster's original account about snapping into a mitigating circumstance that could lead the jurors to entertain doubts the killing was premeditated—an element of the first-degree murder charge—or could lead them to conclude the homicidal impulse was the product of heat of passion, supporting a voluntary manslaughter verdict.

The lawyer also leaned against self-defense because it would be inconsistent with those mitigating considerations. Self-defense entails a calculated decision that a situation poses an immediate danger of great bodily injury or death necessitating a forceful response that itself may leave the aggressor seriously wounded or dead. So a person acting in self-defense intentionally kills with premeditation. The law, however, excuses or justifies the killing because the person legitimately acts to protect himself or herself. That state of mind is not considered criminally blameworthy and, if accepted, absolves the person of guilt. See *State v. Waller*, 299 Kan. 707, 721, 328 P.3d 1111 (2014); *State v. Staten*, No. 108,305, 2015 WL 423644, at *23 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., dissenting), *aff'd* 304 Kan. 957, 377 P.3d 427 (2016). If the jurors were to reject Webster's evidence about his state of mind, they would be left to consider physical acts that would satisfy the elements of first-degree murder—an intentional killing done with premeditation. K.S.A. 21-3401; see *Waller*, 299 Kan. at 721.

6

The lawyer testified that he discussed those strategic ramifications of a self-defense defense with Webster and recommended against that approach to the jury trial. According to the lawyer, Webster concurred with that assessment and, therefore, chose not to testify.

In its memorandum opinion, the district court found the lawyer made a carefully considered strategic recommendation that Webster accepted. On that basis, the district court concluded that the lawyer had provided constitutionally adequate representation to Webster. Accordingly, Webster could not establish an essential part of his habeas corpus claim. We haven't anything of significance to add to the district court's assessment on that score. The lawyer made a reasoned and reasonable strategic decision about how to defend Webster against the first-degree murder charge. And, although it is not strictly speaking part of the *Strickland* analysis, the strategy proved to be somewhat successful in that Webster was acquitted of the most serious charge. He received a comparatively long presumptive sentence on the lesser second-degree murder conviction largely because of his criminal history. Because the trial strategy was constitutionally reasonable, we need not and do not address the prejudice component of Webster's 60-1507 claim.

In short, Webster has failed to show that he was inadequately represented in his jury trial. His trial lawyer acted well within the range of constitutional reasonableness in weighing self-defense and advising Webster of the potential hazards of pursuing that strategy in front of the jury. Webster, therefore, cannot meet the legal requirements for relief under K.S.A. 60-1507.

Affirmed.