NOT DESIGNATED FOR PUBLICATION

No. 119,016

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JESUS A. LOYO,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed May 3, 2019. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.

PER CURIAM: A jury convicted Jesus Loyo of one count of aggravated indecent liberties with a child and one count of aggravated criminal sodomy. On direct appeal, a panel of this court affirmed his convictions. *State v. Loyo*, No. 112,179, 2015 WL 7162109 (Kan. App. 2015) (unpublished opinion). Loyo then filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel. The district court summarily denied his motion, and Loyo appeals.

1

FACTS

In July 2012, 13-year-old B.R. reported that her stepfather, Loyo, had touched her inappropriately. She told police the first time it happened she was on the couch when Loyo laid down next to her and put his hand down her pants. She said the second time Loyo came into her bedroom, placed his head under the blankets, and put his tongue on her vagina outside of her pajamas. The third time, Loyo came into her bedroom and put his hands on her vagina outside her pajamas.

Police interviewed Loyo through a certified Spanish interpreter. Loyo admitted he had gone into B.R.'s bedroom one time and "kiss[ed] her on her vagina on top of her clothes." He said another time he went into her bedroom and slid his hand back and forth on her vagina over her clothes.

The State charged Loyo with two counts of aggravated indecent liberties with a child and one count of aggravated criminal sodomy. At trial, B.R. provided testimony consistent with her police interview. Loyo also testified. He denied kissing B.R.'s vagina, but could not remember if he rubbed it. He said he accidentally brushed her vagina or her leg when he moved her blankets.

Loyo claimed he was confused during his police interview and did not understand some questions. He admitted he understood the word vagina and was not confused about what part of the body police were questioning him about. He also admitted telling police that he kissed B.R.'s vagina and touched it on more than one occasion. But he said he only did so because he wanted to protect his family, and he thought it was the best way to avoid being separated from them.

The jury acquitted Loyo of the aggravated indecent liberties charge that alleged he had touched B.R.'s vagina while she was on the couch. The jury convicted him of the

other two charges. For each conviction, the district court imposed concurrent sentences of life in prison without the possibility of parole for 25 years.

Loyo appealed, raising two issues. He claimed the evidence was insufficient to support his convictions. He also argued the district court committed clear error when it gave an inference of intent instruction. A panel of this court affirmed his convictions. *Loyo*, 2015 WL 7162109, at *1, 6.

In 2017, Loyo filed a K.S.A. 60-1507 motion alleging ineffective assistance of his trial counsel, Joseph Behzadi. He claimed Behzadi failed to object to the inference of intent instruction; failed to consult with expert witnesses about B.R.'s forensic interview; failed to adequately cross-examine the officer who interviewed B.R.; failed to seek a competency evaluation of Loyo; and Behzadi's errors cumulatively denied Loyo the right to effective counsel. Loyo also claimed his pretrial counsel was ineffective for waiving arraignment without consulting him. The district court summarily denied the motion. Loyo appeals.

ANALYSIS

On appeal, Loyo focuses on three claims against Behzadi. First, he argues Behzadi was ineffective for failing to consult with or call an expert on forensic interviews. Second, he argues Behzadi was ineffective for failing to object to an erroneous jury instruction. Finally, he argues Behzadi was ineffective for failing to seek a competency evaluation of Loyo.

*Standard of Review and Relevant Law*

When the district court summarily denies a K.S.A. 2018 Supp. 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the

3

case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

To avoid the summary denial of a K.S.A. 2018 Supp. 60-1507 motion, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's claims must be more than conclusory. In other words, the movant must provide either an evidentiary basis to support those claims or the basis must be evident from the record. If the movant meets this burden, the court must hold a hearing unless the motion is a "second" or "successive" motion seeking similar relief. *Sola-Morales*, 300 Kan. at 881 (quoting *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 [2010]).

To succeed on an ineffective assistance of counsel claim, a criminal defendant must prove (1) that defense counsel's performance was deficient under the totality of the circumstances, and (2) defense counsel's deficient performance prejudiced the defendant. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Reasonable probability means a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made

4

after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690-91).

*Failure to Consult with an Expert Witness on Forensic Interviews*

Loyo first argues Behzadi was ineffective because he did not consult with an expert on forensic interviews or call such an expert to testify. At trial, the officer who interviewed B.R. testified he used forensic interview techniques designed for interviewing children. He also testified about what B.R. had told him, but a record of the interview was not admitted into evidence. Loyo contends an expert witness was necessary to review and attack B.R.'s interview as well as help prepare for cross-examination of the officer.

The district court denied Loyo's claim. It noted his claim could have merit if it were not for Loyo's inculpatory statements. The court cited *Mullins v. State*, 30 Kan. App. 2d 711, 717-18, 46 P.3d 1222 (2002), in which a panel of this court held that trial counsel was ineffective for failing to consult with an expert witness on child interview techniques. There, however, the defendant had been convicted mainly on the victim's testimony. The *Mullins* court held that the importance of using these experts was well known at the time of the defendant's trial and could thus constitute deficient performance. 30 Kan. App. 2d at 717. It also held that the defendant was prejudiced because an expert witness may have presented strong evidence to undermine the abuse allegations in that case. 30 Kan. App. 2d at 717-18.

Here, the district court acknowledged: "'*Mullins* makes it nearly imperative for trial counsel to consult with such an expert in cases of this nature where the State will rely primarily if not exclusively on the testimony of a child victim and there are factors . . . that

5

call into question the reliability of such testimony.'" (Quoting *Bailey v. State*, No. 90,833, 2004 WL 1087063, at *3 [Kan. App. 2004] [unpublished opinion]). But the district court went on to hold that the State also presented Loyo's confession, and an expert witness would not have been helpful in discrediting his statement. Thus, the court held Behzadi's failure to consult with or call an expert had not prejudiced Loyo.

As the State notes, panels of this court have declined to establish a bright-line rule that defense counsel in these situations must consult with an expert. See, e.g., *Randolph v. State*, No. 116,765, 2017 WL 6072956, at *5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 308 Kan. 1595 (2018); *Hall v. State*, No. 109,168, 2014 WL 1096748, at *8 (Kan. App. 2014) (unpublished opinion). But because Behzadi did not testify at a hearing, there is no way to know if he made a strategic decision not to consult with an expert. Based on the record, we cannot determine if Behzadi's performance was deficient. That said, we can still affirm if the record shows Loyo was not prejudiced. See *Sola-Morales*, 300 Kan. at 886.

Loyo cites *Jacques v. State*, No. 89,805, 2004 WL 117337, at *3-4 (Kan. App. 2004) (unpublished opinion), in which the court found the district court erred in summarily dismissing a K.S.A. 60-1507 motion without holding an evidentiary hearing. There, the defendant alleged his trial counsel was ineffective for failing to report juror misconduct to the district court. In his motion, he listed potential witnesses and included an affidavit. The *Jacques* court held that a district court errs in denying a motion without an evidentiary hearing if the motion "alleges facts not in the original record that would, if true, entitle petitioner to relief, and if readily available witnesses are identified whose testimony would support such facts or other sources of evidence." 2004 WL 117337, at *1 (citing *Wright v. State*, 5 Kan. App. 2d 494, 495-96, 619 P.2d 155 [1980]). The *Jacques* court thus remanded for an evidentiary hearing to determine if the defendant's allegations were true and whether they resulted in prejudice. 2004 WL 117331, at *3.

6

Loyo alleges Behzadi should have consulted with an expert on forensic interviews. But unlike *Jacques*, Loyo has not named a potential witness who would testify that an expert witness would have helped his defense. He has not identified problems with the interviewing officer's technique that an expert witness might have highlighted to cast doubt on the credibility of B.R.'s statements. See *Ferenz v. State*, No. 118,803, 2018 WL 5851400, at *7 (Kan. App. 2018) (unpublished opinion) (noting defendant had not alleged facts in K.S.A. 60-1507 motion about what consultation with expert may have revealed), *petition for rev. filed* December 7, 2018.

Loyo also cites *Holmes v. State*, 292 Kan. 271, 283, 252 P.3d 573 (2011), in which the Kansas Supreme Court held the district court erred by dismissing the defendant's K.S.A. 60-1507 motion alleging ineffective assistance of appellate counsel without holding an evidentiary hearing. The defendant argued on direct appeal that the district court had erroneously admitted some exhibits referencing the defendant's prior bad acts and other potentially prejudicial information. But appellate counsel failed to include the exhibits in the record on appeal. The defendant then filed a K.S.A. 60-1507 motion alleging his appellate counsel was ineffective for failing to include the exhibits on appeal. The district court denied the motion after a preliminary hearing. On review, the *Holmes* court held that without the exhibits, it could not determine what information had been presented to the jury. 292 Kan. at 282-83. And without knowing this, it could not determine whether the defendant had been prejudiced and whether the defendant's direct appeal would have been successful if appellate counsel had included the exhibits. 292 Kan. at 282-83. The *Holmes* court remanded the case for an evidentiary hearing. 292 Kan. at 284.

But Loyo's case is distinguishable from *Holmes*, because the record shows Behzadi's alleged failure to consult an expert did not prejudice Loyo. This case is more like *Westerman v. State*, No. 94,627, 2006 WL 2440003, at *4 (Kan. App. 2006) (unpublished opinion), in which the court upheld the summary denial of the defendant's

7

K.S.A. 60-1507 motion alleging ineffective assistance of counsel. There, the defendant claimed his trial counsel was ineffective for failing to call an expert on interview techniques during his aggravated indecent liberties trial. But this court noted that the defendant had admitted at trial to touching the victim, and thus his conviction did not rely mainly on the victim's uncorroborated testimony. As a result, the *Westerman* court affirmed the summary denial of the defendant's motion, finding a hearing was unnecessary. 2006 WL 244003, at *3.

As with *Westerman*, the State did not rely only on B.R.'s interview and testimony in making its case against Loyo. It also introduced Loyo's confession to police. His confession corroborated B.R.'s statements about what happened during the two incidents in her bedroom. In fact, Loyo even corrected the interviewing officer about the time frame of one of the incidents. While Loyo recanted his confession at trial, the jury convicted him only of the two counts he originally confessed to in his police interview.

In addition, B.R. testified in court, so her interview mainly served to bolster her credibility. She was also subject to cross-examination by Behzadi, and he attacked her credibility by suggesting she made these allegations because she did not want to live with her mother. As a result, no reasonable probability exists that consultation with an expert on forensic interviews would have changed the outcome of Loyo's trial, and Loyo has failed to show he is entitled to an evidentiary hearing on this point.

*Failure to Object to an Outdated Jury Instruction*

Next, Loyo argues Behzadi was ineffective for failing to object to an erroneous jury instruction. The district court gave this instruction to the jury:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case.

8

You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

This instruction, known as the inference of intent instruction, was based on PIK Crim. 3d 54.01 (2004 Supp.). But the current pattern instructions recommend that district courts no longer give an inference of intent instruction "because the concept is now incorporated in the definition of intentional conduct in PIK [Crim.] 4th 52.010 and K.S.A. [2018 Supp.] 21-5202(h)." PIK Crim. 4th 52.290 (2016 Supp.).

Loyo challenged the inference of intent instruction on direct appeal. The *Loyo* court found the district court arguably erred in giving the instruction. But the court also held it was not clear error because "there is no real danger that the jury would have been misled as to what the State was required to prove" given the other instructions. 2015 WL 7162109, at *5.

In his K.S.A. 60-1507 motion, Loyo argued Behzadi was ineffective for failing to object to the inference of intent instruction. The district court dismissed this claim, noting Loyo had already raised this issue in his direct appeal. The court added: "[Loyo] has not established permissible grounds for relitigating the same or additional jury instruction challenges as an ineffective assistance of counsel claim under K.S.A. 60-1507."

Loyo argues his direct appeal does not preclude him from arguing Behzadi was ineffective for failing to object to the instruction. He contends that if Behzadi had objected, the district court may not have given the instruction in the first place. He also asserts that Behzadi left him in a less favorable position on direct appeal. If Behzadi had objected to the instruction, Loyo would have had only to meet the statutory harmless error standard, rather than meet the more onerous clear error standard.

9

This court has addressed whether trial counsel was ineffective for failing to object to jury instructions, even when the defendant raised the jury instruction issue in the direct appeal. See *Crooks v. State*, No. 93,759, 2006 WL 90104, at *2-4 (Kan. App. 2006) (unpublished opinion). The State agrees we are not precluded from reviewing this issue for this reason. Instead, the State argues we should not review this issue because Loyo did not specifically argue in his motion that Behzadi's failure to object left him in a less favorable position on appeal. It notes Loyo has also failed to explain why we should review this issue for the first time on appeal, violating Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). But even if Loyo had complied with this rule, his claim still fails because he cannot establish prejudice, and we can affirm the district court as right for the wrong reason. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

If Behzadi had objected to the instruction, this court would have reviewed the instruction for harmless error on direct appeal. Because Loyo has not alleged a violation of his constitutional rights, this court would have applied the statutory harmless error standard. That standard requires the party benefiting from the error to persuade the court no reasonable probability exists that the error affected the trial outcome given the entire record. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

As noted in Loyo's direct appeal, the Kansas Supreme Court had consistently approved PIK Crim. 3d 54.01 (2004 Supp.), finding it did not impermissibly shift the State's burden of proof. 2015 WL 7162109, at *5; see, e.g., *State v. Ellmaker,* 289 Kan. 1132, 1143-44, 221 P.3d 1105 (2009). As explained in the PIK Committee's Notes on Use for PIK Crim. 3d 54.01 (2004 Supp.), the inference of intent instruction "is a rule of evidence and does not deal with the required element of criminal intent necessary for conviction in those cases where criminal intent is a necessary element of the offense." And the instruction emphasizes that it is only a permissive inference and the jury may accept or reject it. See PIK Crim. 3d 54.01 (2004 Supp.), Comment (stating inference of

10

intent instruction "is designed to make it crystal clear that the 'presumption' is only a permissive inference, leaving the trier of fact free to consider or reject it").

We consider "'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have mislead the jury.' [Citation omitted.]" *State v. Butler*, 307 Kan. 831, 843, 416 P.3d 116 (2018). Here, the district court also gave an instruction based on PIK 4th Crim. 52.010 (2016 Supp.), informing the jury "[a] defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State." The court also correctly instructed the jury on the presumption of innocence and the State's burden of proof.

Finally, Loyo argues the error was not harmless because the evidence did not show that he acted with the requisite intent. He notes his testimony conflicted with B.R.'s. But as the State points out, the *Loyo* court found sufficient evidence supported Loyo's convictions, including that the State provided sufficient evidence that he acted with the requisite intent for aggravated indecent liberties with a child. 2015 WL 7162109, at *2-4. While Loyo's testimony conflicted with B.R.'s, his police statement corroborated her testimony. As a result, no reasonable probability exists that the outcome of Loyo's trial or direct appeal would have been different if Behzadi had objected to the inference of intent instruction.

*Failure to Seek a Competency Evaluation*

Next, Loyo argues Behzadi was ineffective because he failed to request a competency evaluation. He contends he only has a middle school education and does not speak or understand English. For these reasons, he asserts he could not understand the proceedings' nature and purpose, and he could not assist in his defense.

11

The district court denied Loyo's claim, finding his allegations were conclusory. The court noted Loyo had not alleged an interpreter had been withheld, and he had not claimed to be mentally incompetent. The court noted that Loyo had made no claims of prejudice because of his low English proficiency level.

Under K.S.A. 22-3301(1), defendants are incompetent to stand trial when they cannot understand the nature and purpose of the proceedings or they cannot assist in their defense because of a mental illness or defect. Loyo provides no authority showing that a low educational level or a low English proficiency level constitutes a mental illness or defect. He provides no other authority showing these attributes can render a defendant incompetent to stand trial.

On appeal, Loyo acknowledges he relied on K.S.A. 22-3301(1) in his motion. But he contends he was not actually arguing he was incompetent under that statute. Instead, he asserts he was arguing his educational and English levels prevented him from understanding the proceedings and from assisting in his defense. According to Loyo, this resulted in a violation of his right to due process under the Fourteenth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

The record is unclear about whether Loyo testified through an interpreter at trial. But he had an interpreter available throughout the proceedings. Nothing in the record suggests he did not understand he was being criminally prosecuted for a child sex offense. In fact, Loyo testified he had been afraid he would lose his children because B.R.'s accusations were so serious. Accordingly, this claim also fails, and we affirm the district court's decision.

12

*Abandoned Points*

On appeal, Loyo has not raised or briefed his claim that his pretrial counsel was ineffective. He has also not briefed his claim that Behzadi was ineffective because of cumulative error. As a result, he has waived and abandoned these arguments. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). In any event, as is shown in the above rulings, there is no basis for these contentions.

Affirmed.