NOT DESIGNATED FOR PUBLICATION

No. 127,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRADLEY VERSTRAETE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Submitted without oral argument. Opinion filed January 24, 2025. Affirmed.

*Josh V.C. Nicolay*, of Stull, Beverlin, Nicolay & Haas, LLC, of Pratt, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., HURST and PICKERING, JJ.

PER CURIAM: Bradley Verstraete appeals the Pratt County District Court's denial of his motion for habeas corpus relief from his convictions in a jury trial for attempted intentional second-degree murder of a Pratt police officer and aggravated assault of a second Pratt police officer. The district court appointed a lawyer for Verstraete and held an evidentiary hearing on his motion. Especially given the abbreviated appellate record and Verstraete's testimony at the hearing, we find no error in the district court's ruling and affirm.

1

Verstraete contends his legal representation leading up to and during the trial was constitutionally inadequate, entitling him to relief under K.S.A. 60-1507. At the outset, we point out that Verstraete was the only witness to testify at the motion hearing, so the record includes nothing directly from the lawyer who represented him explaining the defense strategy. And the transcript of the jury trial is not part of the appellate record in this proceeding. We have pieced together an outline of the underlying facts from the record and the narrative in this court's opinion affirming the convictions on direct appeal. *State v. Verstraete*, No. 117,455, 2018 WL 3596175, at *1-2 (Kan. App. 2018) (unpublished opinion). That outline lends sufficient context for us to decide the issues on appeal in light of Verstraete's hearing testimony.

Verstraete apparently has chronically experienced mental illness. In January 2015, Pratt police officers responded to a noise complaint at the apartment complex where Verstraete lived. It is unclear who placed the call. But in the 60-1507 hearing, Verstraete implied he made the call because he was concerned people were out to get him. In any event, Verstraete was outside with an axe handle in one hand and a knife in the other, and he believed people intended to kill him. According to Verstraete's hearing testimony, one city police officer arrived and asked him what was going on, and he apparently explained people were mad at him and chasing him. So, according to Verstraete, the officer knew he was concerned about his safety. A second city police officer arrived almost immediately.

As described in our earlier opinion, the crimes unfolded this way: The officers instructed Verstraete to drop the knife and axe handle. He said he would after he returned to his apartment. (At the 60-1507 hearing, Verstraete testified he considered the apartment to be a place of safety.) The officers didn't want him to do that because anyone in the apartment would be at risk and Verstraete might have had additional weapons there. One officer tased Verstraete to little effect. Verstraete then went after the officer. The

other officer fired his handgun. The force of the bullet knocked Verstraete down, but the bullet apparently hit a drink container, so Verstraete was uninjured. He got up; announced, "'I'm going to fucking kill you'"; and charged at one of the officers. The other officer then shot Verstraete in the chest. *Verstraete*, 2018 WL 3596175, at *2.

Ultimately, the State charged Verstraete with one count of attempted intentional second-degree murder and alternatively with one count of aggravated assault of each police officer. The officers and other witnesses testified at the jury trial in September 2016. Verstraete did not. The district court instructed the jury on the use of deadly force in self-defense consistent with K.S.A. 21-5222 and PIK Crim. 4th 52.200. As we have indicated, the jury convicted Verstraete of attempted murder of one of the officers and aggravated assault of the other. The district court later sentenced Verstraete to a controlling 102-month prison term.

After this court affirmed the verdicts and sentences in the direct criminal case, Verstraete filed his 60-1507 motion. He has appealed the denial of the motion, and that is the matter now before us.

LEGAL ANALYSIS

In this appeal, Verstraete asserts the lawyer representing him at trial was constitutionally ineffective in two ways. First, the lawyer failed to introduce as trial exhibits various text messages and emails Verstraete sent to family members shortly before the confrontation with the police officers, so the jury did not consider them in reaching their verdicts. Second, the lawyer improperly influenced him not to testify in his own defense. The district court found those points did not warrant relief.

When we review the denial of a 60-1507 motion after a full evidentiary hearing, we accept the district court's findings of fact to the extent they are supported with

3

substantial competent evidence. But we exercise unlimited review of the determinative legal issues. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

To prevail on his 60-1507 motion, Verstraete must show both that his legal representation "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent any substandard lawyering there was "a reasonable probability" the outcome in the criminal case against him would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). Reasonable representation demands that degree of "skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. 466 U.S. at 694.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the legal representation should be deferential, blunting hindsight criticism unduly colored by a lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer has made reasoned strategic decisions bears on the competence component of the *Strickland* test.

Even if Verstraete had been inadequately represented at trial, his 60-1507 motion fails if he cannot establish substantial prejudice. A district court properly may deny a motion on the prejudice component of the *Strickland* test without assessing the

sufficiency of the representation. And we may affirm a denial of relief on that basis. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *Robinson v. State*, No. 122,089, 2022 WL 4112681, at *2 (Kan. App. 2022) (unpublished opinion). In other words, assuming Verstraete's legal representation fell below the Sixth Amendment standard, he is not entitled to a new trial if the result would have been the same with competent counsel.

On his first point, Verstraete contends the text messages and emails would show that immediately before the confrontation with the police officers, he was fearful he would be killed and that some people were after him. But Verstraete faces a two-fold problem in making any headway on this contention. First, the communications are not in the record, so we have no clear understanding of what precisely Verstraete said in them. Neither did the district court. For that reason alone, Verstraete can't show that his trial lawyer made a grievous tactical error in not offering them as trial exhibits.

At this juncture, demonstrating some measure of prejudice is a bigger obstacle for Verstraete. As he has characterized the text messages and emails, they would have been substantially redundant of what the officers recounted at trial about his state of mind. Moreover, at the 60-1507 hearing, Verstraete testified that he told the officers he feared for his safety and people were pursuing him. So Verstraete's somewhat disturbed state of mind during his interaction with the police officers was essentially undisputed in the trial evidence. We have no reason to infer, let alone conclude, that even multiple text messages and emails reciting his delusional belief might have caused the jury to come to a different decision in their deliberations.

For his other point on appeal, Verstraete asserts his trial lawyer talked him out of testifying in his own defense at the trial. But he faces similar hurdles on this claim. A

5

criminal defendant has an absolute right to testify in their own defense, and the choice to testify is a personal one for the defendant to make regardless of their lawyer's advice. See *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016); *State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000). Presumably, however, most defendants at least consider their lawyers' recommendations about testifying in making the decision.

Although Verstraete's trial lawyer did not testify during the 60-1507 hearing, we have some insight into her strategy. Verstraete testified about the advice he was given. Ahead of the trial, Verstraete apparently had some difficulty remembering what happened during his encounter with the two police officers outside his apartment. According to Verstraete, the lawyer told him his testimony about fearing he would be killed by other people could support a defense based on mental disease or defect. But the lawyer said it wouldn't really help with self-defense, especially because he didn't believe the police officers were among the people out to get him. At the 60-1507 hearing, Verstraete also seemed to acknowledge that he had waived his right to testify at trial in a colloquy with the district court. Considering Verstraete's recitation of the lawyer's advice, we are not prepared to say a recommendation against his testifying at trial fell below the constitutional standard for adequate representation. Moreover, nothing in that recitation suggests the lawyer browbeat or hornswoggled Verstraete into forgoing his right to testify.

As with his first point, Verstraete has not demonstrated any tangible prejudice from his failure to testify at trial. See *State v. Rice*, 261 Kan. 567, 609, 932 P.2d 981 (1997) (trial lawyer constitutionally deficient in advising defendant not to testify at trial based on elementary misunderstanding of impeachment rules, but error did not warrant relief because defendant's testimony would not have changed outcome); *Ward v. State*, No. 123,998, 2022 WL 3135317, at *4 (Kan. App. 2022) (unpublished opinion) (failure to show prejudice from failure to testify at trial undercuts defendant's claim for relief in 60-1507 proceeding). Before trial, Verstraete had only a fuzzy recall of what happened

6

with the police officers, so his trial testimony would not have materially conflicted with, let alone discredited, their account of the incident. As we have already explained, the testimony Verstraete could have given at trial about his disordered state of mind—that people were after him and intended to seriously harm or kill him—would have added nothing of substance to what the jury otherwise heard. And the district court instructed the jury on self-defense, so Verstraete's decision against testifying did not legally compromise his preferred pitch to the jury for not guilty verdicts. In sum, Verstraete has not demonstrated any legal prejudice flowing from his failure to testify during the jury trial.

Affirmed.