NOT DESIGNATED FOR PUBLICATION

No. 116,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSHUA ZURN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed December 22, 2017. Affirmed.

*Jeffrey C. Leiker*, of Leiker Law Office, P.A., of Kansas City, for appellant.

*Mark A. Dupree Sr.*, district attorney, *Bryanna R. Hanschu*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

PER CURIAM:  Joshua Zurn appeals the district court's denial of his motion filed pursuant to K.S.A. 60-1507. Zurn alleged eight reasons that his attorney Charles Ball was ineffective:  (1) Ball was unprepared for trial because he did not contact any of the witnesses prior to trial and did not request a preliminary hearing transcript; (2) Ball did not advise Zurn that he had a right to independent counsel or inform Zurn of the potential conflict of interest present in defending Zurn and his father; (3) Ball did not inform Zurn of the right to the opinion of an independent attorney; (4) Ball did not discuss plea negotiations and did not inform Zurn of the potential sentence he faced if convicted;

1

(5) Ball proceeding with a joint trial compromised Zurn's defense and never informed Zurn of the right to request a severance; (6) Ball recommended Zurn testify at trial but did not question him to corroborate Zurn's alibi defense; (7) Ball recommended that his father not testify at trial which compromised Zurn's case and did not request a limiting instruction on the fact that one defendant testified and the other did not; and (8) Ball's prior representation of Zurn compromised the defense and Ball had a conflict of interest due to this prior representation. The Wyandotte County District Court held an evidentiary hearing on Zurn's motion and found Zurn was not denied a fair trial due to ineffective assistance of counsel and that his representation met the legal standard. We agree and affirm.

The facts of Zurn's underlying criminal case are set out succinctly by the panel that heard his direct appeal:

"Joshua M. Zurn and Roy D. Zurn were tried together, before a jury, on similar criminal charges arising from an incident which occurred during the evening of October 29, 2011. Joshua was convicted of aggravated battery (K.S.A. 2011 Supp. 21-5413[b][l][A]), burglary (K.S.A. 2011 Supp. 21-5807[a][l]), and felony theft (K.S.A. 2011 Supp. 21-5801[a][1] and [b][3]). Roy was convicted of aggravated battery (K.S.A. 2011 Supp. 21-5413[b][1][A]), and theft (K.S.A. 2011 Supp. 21-5801[a][l] and [b][3]).
. . . .
"Roy is the father of Joshua. Both men were well-acquainted with Brett Jarrett. Roy and Joshua had been neighbors with Jarrett in Kansas City, had frequently seen him in their respective construction trades, and had vacationed with him. Jarrett also had lived for a time with Judy Zurn, the sister of Roy's wife (Joshua's mother), and Jarrett had worked for Judy's brother. Judy testified, 'We had a very close relationship,' and there was no evidence at trial of a falling out among them.
"At trial, Jarrett testified that he left his home on the evening of October 29, 2011, to investigate the barking of his neighbor's dogs. Suddenly, Roy and Joshua attacked and beat him. Jarrett testified that Joshua was agitated and asked if 'Sylvia,' Joshua's ex-girlfriend, was with Jarrett. Jarrett said he denied it, but that the beating

2

continued, during which time, according to Jarrett, Joshua entered his home and stole Jarrett's laptop computer, a cell phone, and $480 in cash. Jarrett was seriously injured in the attack and required hospitalization and surgery.

"During the defense case, Roy and Joshua presented an alibi defense. The jury returned guilty verdicts, although it did acquit Roy of the burglary charge." *State v. Zurn*, No. 108,887, 2013 WL 5737354, at *1 (Kan. App. 2013) (unpublished opinion), *rev. denied* 300 Kan. 1108 (2014).

Zurn was unsuccessful in his direct appeal, and the Kansas Supreme Court denied his petition for review. *Zurn*, 2013 WL 5737354, at *1. On June 16, 2015, Zurn filed a motion under K.S.A. 60-1507 alleging that his trial counsel, Charles Ball, was ineffective in his representation at trial.

It is important to mention that prior to the hearing on Zurn's motion the district court had heard a K.S.A. 60-1507 motion from Zurn's father, Roy, claiming ineffective assistance of counsel based on issues arising from sentencing. Both parties on appeal cite a volume that is not in the record on appeal that seems to be from Roy's K.S.A. 60-1507 hearing. The court allegedly found that Ball was ineffective by essentially guaranteeing Roy that he would receive probation, and Roy was prejudiced because Ball did not bring character witnesses that would have supported a downward dispositional departure due to Ball's error. The district court discussed whether it could consider the testimony from Roy's hearing; Zurn objected to the consideration of the testimony because he was not present and given the opportunity to cross-examine the witness. The district court concluded it could not consider the testimony from that hearing.

At the evidentiary hearing, Zurn presented expert testimony from Carl Cornwell, an experienced attorney in criminal defense. Cornwell informed the court of his concerns with Ball's representation of Zurn. First, Cornwell told the court that the first thing he does when discussing a case with a new client is to go over the potential ramifications of

3

the punishment if they were to be convicted. Cornwell discussed his procedure of seeking out a plea even if the client does not want to plead. Cornwell stated that not seeking out a plea for Zurn was below the normal standard of care for an attorney. Next, Cornwell stated that in his opinion there is always a problem with representing codefendants that are charged with the same crime due to potential conflicts of interest. Whenever Cornwell has a case in which he represents codefendants he discusses with the potential clients their ability to have independent counsel represent them and addresses the conflict on the record—if a record is made for the case.

Turning to the evidence from the underlying case, Cornwell thought the testimony supported that Roy was more aggressive in his attack on Brett Jarrett, and the differences in the way Roy and Zurn attacked Jarrett showed a need for independent counsel to represent their interests. Cornwell also stated that whenever he receives discovery in a case, he reviews the information with his clients in order to prepare for trial. When calling a defendant to testify, Cornwell would prepare the defendant in various ways; in contrast, not preparing a defendant would fall below a reasonable standard of care for an attorney, in Cornwell's opinion. Further, Cornwell believed failing to have Zurn tell the specifics of his alibi defense while on the stand fell below the professional standard of care. Cornwell stated that discussing an alibi witness' testimony before the witness testifies is important because the defense is extremely fact specific. This failure to contact an alibi witness before trial fell below the necessary standard of care for an attorney. However, on cross-examination, Cornwell told the court he did not know how Ball investigated the alibi defense or if the failure to talk to alibi witnesses would have made a difference in the case.

Although Cornwell recognized these failings, he did not provide a concrete opinion on whether the failings affected the verdict. In Cornwell's view, "[Jarrett] was real solid, the victim was. I mean he didn't deviate. I mean he was pretty—pretty straightforward. It sounded like he was doing—saying what he remembered." Cornwell

4

also discussed that the defense could have been better presented to the jury. Ultimately, Cornwell provided no discernible opinion on the issue of prejudice.

Zurn testified about Ball's representation at the hearing. Ball never told Zurn about a potential conflict of interest or that he had a right to independent counsel. Ball allegedly told Zurn that the best option was for Jarrett not to show up at trial. Ball did not discuss the Zurns' relationship with Jarrett or the circumstances around the incident for which the Zurns were tried. Zurn only met with Ball three times prior to trial, and the meetings lasted approximately 15 minutes. The discussion focused on the money the Zurns would pay for representation, and Ball never discussed trial strategy in the meetings or the evidence that would be presented at trial.

Ball also did not discuss what Zurn was going to testify to prior to calling him as a witness in his defense. Zurn stated that Ball told him about 30 seconds prior to being called as a witness that it would be beneficial for Zurn to testify about why he ran from the police. Ball never discussed with Zurn the ramifications of testifying. Zurn also presented evidence that he had hired Ball to represent him on one of the traffic tickets that his testimony at the underlying proceeding entailed. Finally, Zurn stated that Ball never counseled him about a potential plea in this case.

On cross-examination, Zurn admitted that he never asked Ball to resolve the case through a plea; further, he always told Ball that he was innocent of the charges. Zurn also stated that he had told the district court at a prior proceeding that he was okay with Ball representing both him and his father.

The district court allowed the parties to submit supplemental briefs and after the briefing issued a written decision. The court's findings of fact are not entirely clear from its order. It found some issues that were raised were clearly matters of trial strategy—for instance, failure to seek a plea and not raising that Roy was the main aggressor. In

5

contrast, the district court believed that other claims, like proceeding without independent counsel and not discussing the potential outcomes of a guilty verdict, were potentially meritorious. Without making specific findings of whether Ball performed deficiently in these aspects, the district court addressed whether Zurn was prejudiced by Ball's performance. The court concluded that Ball presented an extremely viable defense and opined that if the case had been tried to the bench a different outcome may have resulted although there was sufficient evidence to uphold the conviction. Ultimately, the court held that Zurn had not shown he was prejudiced and denied the motion.

Zurn filed a timely notice of appeal.

*Did the district court err in denying Zurn's 60-1507 motion based on ineffective assistance of counsel?*

Zurn only raises a single issue on appeal—the district court erred in denying his K.S.A. 60-1507 motion. In reviewing a claim that the district court erred in denying a claim of ineffective assistance of counsel brought under K.S.A. 60-1507, this court uses a two-step standard of review. First, the court considers the district court's factual findings and determines whether the findings are supported by substantial competent evidence. Second, the court reviews the district court's legal conclusion de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). Since Zurn does not challenge the district court's factual findings, we will focus on the legal conclusions drawn from the facts.

In order to establish ineffective assistance of counsel, defendants must satisfy the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Sola-Morales v. State*, 300 Kan. 875, 881-82, 335 P.3d 1162 (2014).

6

Under the first prong of the *Strickland* test, the defendant must establish that counsel's representation was deficient based upon all of the circumstances presented by the trial and representation. *Sola-Morales*, 300 Kan. at 882. An attorney's representation of a client is deficient if it falls below an objective standard of reasonable representation that is guaranteed by the Sixth Amendment to the United States Constitution. *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006). When considering counsel's performance, the court utilizes a strong presumption that the counsel's conduct was within the wide range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Thus, the court's review of the conduct is highly deferential and must be careful to eliminate the distorting effects of hindsight. *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Further, if the complained of decision is actually a strategy decision that was made by counsel upon a thorough investigation of the law and facts of the case, the strategic decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

Under the second prong, the defendant must show that counsel's deficient performance caused prejudice. In order to show prejudice, the defendant must show this court that there is a reasonable probability that the outcome of the trial would have been different had the deficient performance of counsel not occurred. *Sola-Morales*, 300 Kan. at 882.

On appeal, Zurn does not advance every argument that was raised below. Zurn seemingly elected to raise only arguments on whether Ball was ineffective for his investigation of the case, investigation of the alibi defense, failure to advise, and failure to have Zurn testify about the alibi defense. Any other issue that Zurn raised before the district court that is not raised in this appeal is deemed abandoned by virtue of Zurn's failure to brief the issue. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

7

Zurn's brief focuses on the deficient performance prong of the *Strickland* test. Zurn argues why this court should find Ball's actions were deficient and attempts to show that Ball's actions were not the result of trial strategy. Inexplicably, Zurn seems to ignore the prejudice prong of the *Strickland* test. Zurn never directly addresses how he was prejudiced by Ball's alleged deficient performance.

With a very liberal reading of Zurn's brief, two arguments could potentially be interpreted as arguments on the issue of prejudice. First, in the conclusion Zurn compares his K.S.A. 60-1507 motion to that of Roy's K.S.A. 60-1507 motion and seemingly questions whether the denial of his motion was fair. Even though this argument should be interpreted as support for his argument that Ball's performance was deficient, it could be construed as raising prejudice. The second argument that could be interpreted as raising the issue of prejudice is based on statements throughout the brief that assert better investigation and presentation of evidence would have helped Zurn's defense.

There are multiple problems with comparing Roy's K.S.A. 60-1507 motion with the present case. First, Roy's 60-1507 motion is not contained in the record on appeal, and the evidence presented at that motion was not considered by the district court. Zurn bears the burden to designate the record sufficient to show error, and any error in the denial of Zurn's 60-1507 motion that could be ascertained from the granting of Roy's 60-1507 motion is not in the record. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

Second, from Zurn's brief it is clear that Roy's K.S.A. 60-1507 motion involved ineffective assistance of counsel during sentencing. In the brief before this court, Zurn quotes the unprovided transcript:

"The Trial Court wrote in Roy Zurn's 60-1507 case 'The Zurns both testified that they desired to bring witnesses to the sentencing hearing: union workers, their pastor and

8

members of their church. It was claimed that Ball told them that character witnesses were not needed for the hearing. . . . This Court finds that the actions or inaction of Ball at sentencing stage were not sufficient . . . it was improper for trial counsel to guarantee probation. That promise easily could have resulted in a reduced effort by the Zurns at sentencing.'"

Zurn did not raise, before the district court or this court, any argument that Ball was deficient for his performance concerning Zurn's sentencing except for the failure to advise Zurn of the potential punishments he faced if convicted. Zurn did not raise the argument that was raised before the court in Roy's K.S.A. 60-1507. Additionally, he provides no reason for this court to consider the issue for the first time on appeal as is required by Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). Consideration of Roy's sentencing arguments are not properly before this court to consider in respect to Zurn's motion.

Even if this argument is properly before the court it is unclear how it would show prejudice in this case. In order to show prejudice, Zurn must establish that there was a reasonable probability that the outcome would have been different had the error not occurred. The fact that the district court found Roy was prejudiced by Ball's deficient performance has no bearing on whether Zurn was prejudiced by Ball's allegedly deficient performance on the trial issues that are raised in this appeal.

Zurn's second argument, which may raise the issue of prejudice, is derived from statements of Cornwell that additional preparation of the alibi witnesses would have helped Zurn's defense at trial. This argument does not properly address the test Zurn must satisfy to obtain relief. While additional investigation and witness preparation may have been helpful, the standard is whether the outcome would have been changed had the complained of error not occurred. *Sola-Morales*, 300 Kan. at 882. Zurn's own expert witness did not state whether the outcome would have changed had there been a better

9

presentation of the alibi defense. Nowhere in the brief does Zurn allege what facts a better investigation would have revealed.

Additionally, the alibi witnesses that were presented at trial provided a consistent alibi. Three witnesses testified that they were working with Zurn on the day the crime took place and Zurn left around 7:30 p.m. A fourth witness, who was also working with Zurn, stated that he and Zurn left the work site in the witness' vehicle around 7:30 p.m. and traveled to the witness' home in Osawatomie, Kansas. The two arrived in Osawatomie around 8:30 to 8:45 p.m. After arriving in Osawatomie, the two began moving items from the home to the witness' new apartment. They finished moving around 9:30 or 10 p.m. and ate dinner. Next, they returned to the home in Osawatomie to sleep. The witness stated that Zurn was with him for the whole weekend. Additionally, Zurn did not have a vehicle, the witness did not loan Zurn his vehicle, and the witness did not believe that his vehicle was moved on the night the crime took place. At the district court or on appeal, Zurn does not proffer any additional testimony that these witnesses would have presented had Ball prepared better; rather, his own expert witness was unsure whether better preparation would have changed the outcome of trial.

Essentially, the jury had to make a credibility determination between the victim and the alibi. Ball presented a viable alibi defense to the charges; however, the State also presented a compelling case with the victim identifying the defendants, who he has known for years, as the perpetrators. See *Zurn*, 2013 WL 5737354, at \*5-6. Based on the required credibility determination the jury had to make, simply stating that further investigation concerning the alibi witnesses would have helped Zurn's defense does not rise to the level of prejudice required to overturn his convictions.

Ultimately, Zurn has only incidentally raised the issue of prejudice. Zurn may assert that he suffered prejudice, but he does not directly address any reason that he was prejudiced by Ball's performance in his representation. Thus, he has only incidentally

10

raised the issue before this court. An issue or argument that is only incidentally raised in a brief, and not argued therein, has been abandoned by the party bringing the issue. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Zurn has abandoned any argument on the second prong of prejudice. Because Zurn bears the burden of proving both prongs of the *Strickland* test in order to be granted relief for ineffective assistance of counsel and he has abandoned any argument on the second prong, the district court's decision to deny his motion is affirmed.