NOT DESIGNATED FOR PUBLICATION

No. 118,823

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TROY LAMONT LOVE II,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed April 12, 2019.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: Troy Lamont Love II appeals the Saline County District Court's summary denial of his motion for habeas corpus relief from convictions for felony murder and child abuse. Love's motion largely rehashes issues he raised and the Kansas Supreme Court rejected in his direct appeal from the jury verdicts finding him guilty. We find no error and affirm the district court.

In the underlying criminal case, the State charged Love with the murder of B.C.J., the 18-month-old daughter of his live-in girlfriend Robin Harrington. We offer an

1

abbreviated version of the trial evidence bearing on the comparatively narrow issues Love has raised in this appeal.

The State presented medical evidence during the jury trial that B.C.J. sustained a powerful blow or strike that severed her spine at the base of her neck, rendering her brain dead almost instantaneously. The incident occurred in early April 2012 at the residence Love shared with Harrington and her children. During the trial, just over two years later, Love testified Harrington appeared to be dozing on the couch in the living room as he went to check on the children who were supposed to be taking afternoon naps in one of the bedrooms. B.C.J., however, was jumping on a bed. She asked for a drink of water. Love told the jury he went to the kitchen, ate several granola bars, and then got her a glass of water. Love said that when he returned to the bedroom three to five minutes later, B.C.J. was lying unresponsive on the floor.

Love immediately awoke Harrington. At trial, he suggested she wasn't really sleeping. Love then went to a neighbor's home to get help but left as an ambulance crew and law enforcement officers arrived. Again at trial, Love explained he took off because he had an outstanding arrest warrant for a minor offense. B.C.J. was first taken to a hospital in Salina and then transferred to a larger hospital in Wichita where she was officially declared brain dead the next day.

The forensic pathologist who autopsied B.C.J. and testified as a witness for the State told the jury the fatal injury would have required substantial force directly to B.C.J.'s neck or head that could have been applied in a violent shaking of the child. The effect on B.C.J. would have been immediate and catastrophic. The pathologist also testified that he found evidence of older injuries to B.C.J., including broken bones and healing bruises, consistent with ongoing physical abuse. He said the bruising was several days old and that B.C.J. had two ribs that were broken 7 to 10 days earlier and injuries to her vertebrae that were at least 2 to 3 weeks old.

Love called another pathologist as an expert witness who testified that the fatal injury to B.C.J. resulted from the application of "great force" severing the child's spine—what he characterized as a "grab and slam" injury. The pathologist agreed the injury could have been caused by someone violently shaking B.C.J.

Neither expert suggested B.C.J. could have injured herself in an accidental fall from the bed.

Harrington testified at trial that she noticed B.C.J. had bruising inside her left ear and bloodshot eyes about a week to 10 days before the child died. A few days later, Harrington noticed B.C.J. couldn't turn her neck and seemed to be losing hair. She took B.C.J. to a local emergency room. The doctor diagnosed B.C.J. has having an ear infection and swollen glands. The doctor testified at trial as to the treatment he provided B.C.J. and told the jury he did not see what he considered signs of physical abuse.

As we indicated, the jury convicted Love of felony murder and child abuse. The district court later imposed a mandatory sentence of life on Love on the murder conviction and a consecutive term of 55 months in prison on the child abuse conviction. Love filed a direct appeal, and the Kansas Supreme Court affirmed the convictions and sentences. *State v. Love*, 305 Kan. 716, 387 P.3d 820 (2017).

After the Supreme Court's ruling, Love timely filed a habeas corpus motion, under K.S.A. 60-1507, on the grounds his trial lawyer failed to adequately represent him, thereby depriving him of the right to counsel guaranteed in the Sixth Amendment to the United States Constitution. The district court reviewed the motion and the record in the criminal case and summarily denied Love any relief. Love has now appealed that decision.

On appeal, Love raises two points: (1) His trial lawyer inadequately argued for the admission of evidence that Harrington had filed a medical malpractice action against the emergency room doctor shortly before his criminal trial; and (2) his trial lawyer failed to object to testimony the State elicited from various witnesses about the "appropriateness" of Harrington's demeanor following B.C.J.'s injury. Before analyzing those issues, we outline the relevant legal principles governing 60-1507 motions.

To prevail on a 60-1507 motion, a convicted defendant must show both that his or her legal representation fell below the objective standard of reasonable competence guaranteed by the Sixth Amendment right to counsel and that absent the substandard lawyering there probably would have been a different outcome in the criminal case. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. See *Strickland*, 466 U.S. at 694. The movant, then, must prove both constitutionally inadequate representation and sufficient prejudice attributable to that representation to materially question the resulting convictions.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer had made reasoned strategic decisions bears on the competence component of the *Strickland* test.

4

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 110-11, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice.

Regardless of the inadequacy of the legal representation, a 60-1507 motion fails if the movant cannot establish substantial prejudice. And the district court properly may deny a motion that falters on the prejudice component of the *Strickland* test without assessing the sufficiency of the representation. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *Oliver v. State*, No. 106,532, 2013 WL 2395273, at *5 (Kan. App. 2013) (unpublished opinion). In other words, even assuming a criminal defendant's legal representation fell below the Sixth Amendment standard, he or she is not entitled to habeas corpus relief if the result would have been no different with competent counsel.

A district court has three procedural options in considering a 60-1507 motion. The district court may summarily deny the motion if the claims in the motion and the record in the underlying criminal case conclusively show the movant is entitled to no relief. Or the district court may conduct a preliminary hearing with lawyers for the State and the movant to determine if a full evidentiary hearing is warranted. Finally, the district court

may hold a full evidentiary hearing. See *Sola-Morales*, 300 Kan. at 881. Absent an evidentiary hearing, the district court must credit the factual allegations in the 60-1507 motion unless they are categorically rebutted in the record of the criminal case. Where, as here, the district court denies the motion without appointing a lawyer and without holding any hearing, we exercise unlimited review on appeal. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). The district court has received no new evidence, and we can review the motion and the underlying record equally well.

We now turn to Love's first point on appeal. Shortly after his criminal trial began, the prosecutor and his lawyer learned that Harrington had recently filed a petition in the Saline County District Court alleging medical malpractice against the emergency room doctor who had treated B.C.J. The prosecutor asked that the district court exclude any evidence or mention of the civil action in front of the jury. Love's lawyer countered that the civil action could be a basis for impeaching the testimony of either the emergency room doctor or Harrington. In debating this issue, the parties and the district court had only a copy of the petition and lacked any other information about the medical malpractice claim.

The district court granted the prosecutor's motion, so mention of the civil action was off limits during Love's trial. The district court said Love's lawyer could look into calling as witnesses any medical experts Harrington's lawyers might have consulted in preparing the medical malpractice action. See *Biglow v. Eidenberg*, 308 Kan. 873, Syl. ¶ 4, 424 P.3d 515 (2018) (plaintiff typically must present expert testimony on standard of care and causation in medical malpractice action). Love's lawyer did not call any consulting expert from the civil action. In his 60-1507 motion, Love has neither identified any such experts nor provided any information about their professional opinions.

6

Love challenged the district court's ruling barring mention of the medical malpractice case in his direct criminal appeal. The court found no basis for upsetting the guilty verdicts based on the proffer Love's trial lawyer made in support of using the medical malpractice action in questioning Harrington or the emergency room doctor. *Love*, 305 Kan. at 725-26. Here, Love repackages what is essentially the same argument and submits his trial lawyer should have done more to get the evidence of the malpractice action admitted in his trial.

But 60-1507 motions are not intended to be vehicles for arguments that were or could have been presented in a direct appeal. *Manco v. State*, 51 Kan. App. 2d 733, 736, 354 P.3d 551 (2015). If, however, a defendant's lawyer in a criminal trial fails to present or preserve a sound argument *and* the failure amounts to constitutionally inadequate representation, the deficient representation creates an exceptional circumstance permitting the point to be raised in a 60-1507 motion. As we have explained, the movant also must establish prejudice from the failure sufficient to undermine confidence in the criminal trial's outcome to get a new trial.

The medical malpractice petition itself is remarkably vague about what Harrington contends the emergency room doctor did wrong in treating B.C.J. But a plaintiff bringing a civil action need only provide notice—not detailed factual representations—in a petition. See K.S.A. 2018 Supp. 60-208(a)(1). The details typically are developed through the discovery process. Here, the petition could be read to allege the emergency room doctor failed to recognize an injury to B.C.J.'s neck that without treatment deteriorated and became fatal—a theory that would be inconsistent with the mechanism of injury the medical experts described at Love's trial. The petition also could be read to allege the emergency room doctor was negligent in failing to recognize physical signs that B.C.J. had been abused and in failing to take actions that would have prompted her removal from the home, thereby averting the fatal injury the State alleged Love inflicted

7

several days later. The civil petition, however, was not itself evidence of anything; it was merely an allegation.

Here, Love never explains with any specificity just what his trial lawyer should have done with the medical malpractice petition to challenge the testimony of Harrington or the emergency room doctor. Nor has he developed some other evidence derivative of the medical malpractice action, such as expert medical testimony, that would suggest some new or alternative cause of B.C.J.'s death. We fail to see how the filing of the malpractice action would, in and of itself, prompt either Harrington or the emergency room doctor to shape their testimony in a way to implicate Love in a criminal homicide of B.C.J. Likewise, we don't see that the petition could be used to suggest Harrington believed the emergency room doctor (rather than Love) proximately caused B.C.J.'s death. Love offers no such explanation. Harrington, as a lay person, shouldn't be expected to explain the theory of liability underlying the civil action.

In short, Love has failed to show some substandard representation by his trial lawyer with respect to the medical malpractice action generally and the petition in particular. The net effect essentially leaves Love arguing what is functionally the same issue he raised and lost in his direct appeal. The point is without merit in his 60-1507 motion.

For his other point on appeal, Love contends his trial lawyer fell below the constitutional standard for adequate representation by failing to object to the prosecutor asking various witnesses whether they considered Harrington's affect and overall emotional state following the injury to B.C.J. to be appropriate or expected. The witnesses, including medical personnel and law enforcement officers, indicated they did. And some of them also noted that Harrington seemed cooperative or forthcoming about what she knew. Love says those questions and the responses amounted to impermissible vouching for Harrington's credibility. He characterizes the line of inquiry as the legal and

8

practical equivalent of asking whether those witnesses believed Harrington to be truthful. Based on that characterization, he says the questioning violated the well-settled rule that one witness may not offer an opinion on the credibility of another witness. See *State v. Crum*, 286 Kan. 145, 151-52, 184 P.3d 222 (2008); *State v. Elnicki*, 279 Kan. 47, Syl. ¶ 2, 105 P.3d 1222 (2005). Love, therefore, contends the argument and testimony should have been excluded as categorically inadmissible.

But Love also raised this issue in his direct appeal, challenging both the prosecutor's opening statement describing the witnesses' anticipated testimony about Harrington's demeanor and the actual questions to and answers from those witnesses during the trial. *Love*, 305 Kan. at 726-29. The court held that the opening statement outlined "no improper witness commentary" about the appropriateness of Harrington's emotional state or her credibility. The court declined to consider the actual testimony because Love's trial lawyer made no contemporaneous objections to the prosecutor's questions or witnesses' answers. 305 Kan. at 729.

In its opinion, the court cited as illustrative the testimony of Dr. Charles O'Donnell, a physician in Salina who treated B.C.J. immediately after her injury and oversaw her transfer to a Wichita hospital. He interacted with Harrington during that time. Dr. O'Donnell testified that given the circumstances of B.C.J.'s injury, he "was kind of looking" at Harrington's behavior and the genuineness of her emotional reaction. He told the jury Harrington "[s]eemed appropriately distraught" and did not appear to be "evasive" in responding to his questions about what happened. 305 Kan. at 727.

Love's defense at trial offered Harrington as an alternative suspect. He suggested it was possible Harrington feigned dozing on the sofa and got up, went into the bedroom, and fatally injured B.C.J. as he was in the kitchen getting a drink of water for the child. But Love conceded during his testimony that he didn't see or hear Harrington leave the

9

sofa. Harrington told the jury she fell asleep on the sofa and awakened only when Love urgently announced something was wrong with B.C.J.

We again fail to see how Love can show impermissible prejudice here. If the prosecutor's description of the testimony in the opening statement was proper, as the Supreme Court found, then the testimony itself, which conformed to what had been described, similarly would be proper. So an objection to the substance of the testimony would have been unwarranted. A trial lawyer can't be faulted for failing to make what would be a specious objection. Moreover, Love cannot establish impermissible prejudice simply by complaining about the admission of otherwise admissible evidence. He does not claim the evidence, despite its admissibility, should have been excluded as unfairly prejudicial.

Love has not presented grounds for relief in his 60-1507 warranting further consideration. They neither require an evidentiary hearing nor suggest the guilty verdicts may be infirm. The district court did not err in summarily denying the motion.

Affirmed.