NOT DESIGNATED FOR PUBLICATION

No. 125,640

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN NOVOTNY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Submitted without oral argument. Opinion filed February 23, 2024. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., COBLE and PICKERING, JJ.


PER CURIAM: In 2008, Steven Novotny was convicted by a jury of first-degree felony murder and aggravated battery after a jury trial. The Supreme Court affirmed his convictions on direct appeal. Novotny then filed a K.S.A. 60-1507 motion that was summarily denied and he did not appeal from that decision. He then filed a second K.S.A. 60-1507 motion—which is the subject of this appeal—asserting that trial counsel was ineffective. Although the district court also summarily denied this motion, a panel of this court subsequently remanded the matter to the district court for an evidentiary hearing on five of his claims.

1

On remand, after hearing the testimony of witnesses and considering the evidence presented at the hearing, the district court issued a written decision in which it concluded that Novotny's trial counsel was not ineffective and that Novotny had failed to establish prejudice. In this appeal, Novotny asserts a number of arguments, including several that were not asserted below. For the reasons set forth in this opinion, we find that the district court did not commit reversible error in denying Novotny's second K.S.A. 60-1507 motion following the evidentiary hearing. Thus, we affirm.

FACTS

In affirming Novotny's convictions for first-degree felony murder and aggravated battery on direct appeal, the Kansas Supreme Court detailed the underlying facts in *State v. Novotny*, 297 Kan. 1174, 1175-79, 307 P.3d 1278 (2013). As such, they will not be repeated in this opinion. Rather, in this section of the opinion, we will discuss the facts material to the issue presented on appeal. Moreover, we will address additional facts as necessary in the Analysis portion of our opinion.

On December 5, 2013, Novotny filed a pro se K.S.A. 60-1507 motion. In the motion, he made 54 claims against his trial counsel and others involved in his trial. On June 30, 2014, the same district judge who had conducted Novotny's criminal trial summarily denied the motion. In doing so, the district court found:

> "In the Court's opinion, the defendant does not raise any substantial questions of Law or issues of fact. The Motion, files and record in the case conclusively show that Mr. Novotny is entitled to no relief. Therefore, there is no need to appoint counsel or have Mr. Novotny present. For all these reasons, the defendant's Motion is denied."

2

Novotny did not appeal from this summary denial of his K.S.A. 60-1507 motion and it became the final judgment of the court.

On July 16, 2014, Novotny filed a second K.S.A. 60-1507 motion, which is the subject of this appeal. In his second K.S.A. 60-1507 motion, Novotny asserted six claims of ineffectiveness against his trial counsel. The district court summarily denied Novotny's motion, finding it untimely, successive, and without merit. Thereafter, Novotny appealed and a panel of this court remanded the second K.S.A. 60-1507 motion to the district court for an evidentiary hearing on five issues raised in Novotny's motion. *Novotny v. State*, No. 113,546, 2016 WL 2609631, at *2 (Kan. App. 2016) (unpublished opinion).

The claims of ineffective assistance by trial counsel remanded for an evidentiary hearing were:

1. Failure to object to K.S.A. 60–455 evidence;

2. Pressuring Novotny not to testify at trial;

3. Failure to request a mental competency evaluation prior to trial;

4. Failure to object to the prosecution's references to Novotny's nickname of "Loco" at trial; and

5. Failure to adequately investigate the case and consult with Novotny regarding the defense strategy.

On remand, the district court followed the mandate of this court and held an evidentiary hearing on the issues identified. The district court held the evidentiary hearing over two nonconsecutive days. The transcript of the first day of the hearing is 133

3

pages. Likewise, the transcript of the second day of the hearing is an additional 34 pages. At the hearing, Novotny testified on his own behalf. In addition, three other witnesses testified: Steve Osburn, Novotny's sentencing counsel; Vikki Novotny, Novotny's sister; and Richard Ney, Novotny's trial counsel.

After considering the evidence presented and the arguments of counsel, the district court took the matter under advisement. Subsequently, it entered a written decision on August 4, 2022, in which it denied Novotny's second K.S.A. 60-1507 motion. Then, on September 14, 2022, the district court issued an amended decision after identifying an error in its factual recitation in the first decision. In its amended decision, the district court discussed each of the five claims of ineffectiveness by trial counsel and found that Ney had acted reasonably as part of his trial strategy. Ultimately, the district court determined that Novotny "has failed to meet his burden to sustain the [second] K.S.A. 60-1507 against his trial counsel, Richard Ney."

Thereafter, Novotny timely appealed.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in denying Novotny's second K.S.A. 60-1507 motion following an evidentiary hearing. In cases in which a district court has held an evidentiary hearing on a K.S.A. 60-1507 motion, we are to review a district court's factual findings under a substantial competent evidence standard. Substantial competent evidence is evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

In performing our review, we "do not 'reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 486-87, 486 P.3d 1216 (2021). However, our review of a district court's legal conclusions is unlimited. 313 Kan. at 486. At an evidentiary hearing, a K.S.A. 60-1507 movant—in this case Novotny—has the burden to prove by a preponderance of the evidence: (1) that the underlying judgment was rendered by the district court without jurisdiction; (2) that the sentence imposed by the district court was not authorized by law or is otherwise subject to collateral attack; or (3) that there has been a denial or infringement of his or her constitutional rights as to render the district court's judgment vulnerable. See K.S.A. 2022 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2023 Kan. S. Ct. R. at 244) (preponderance burden).

Where a K.S.A. 60-1507 motion alleges ineffective assistance of counsel, we apply the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This test was also adopted by our Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the movant must show that counsel's performance was deficient. Under the second prong, the movant must show that there was a reasonable probability that the result would have been different but for the alleged ineffectiveness of counsel. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022).

To show deficiency of counsel under the first *Strickland* prong, the movant must prove that the attorney's representation fell below an objective standard of reasonableness. As our Supreme Court has explained:

> "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Chamberlain v. State*, 236 Kan. 650, 656-57, 694
P.2d 468 (1985).

See *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022); *Holmes v. State*, 292 Kan.
271, 275, 252 P.3d 573 (2011).

Furthermore, to establish prejudice under the second *Strickland* prong, the movant
must prove that there was a reasonable probability that the alleged ineffectiveness of
counsel's performance affected the outcome of the proceedings based on the totality of
the evidence. If the movant cannot show prejudice as a result of counsel's alleged
deficiencies, "a court need not determine whether counsel's performance was deficient."
*Strickland*, 466 U.S. at 697. As the United States Supreme Court has held, an ineffective
assistance of counsel claim can be denied "solely on that ground if the defendant failed to
establish that he or she suffered prejudice." *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d
152 (2012) (citing *Strickland*, 466 U.S. at 697).

*Testimony of Lori Worley*

At the outset, we note that the first claim of ineffective assistance of counsel
remanded by this court to the district court for consideration was Ney's failure to object to
K.S.A. 60-455 evidence admitted at trial. While this issue was presented by Novotny at
the evidentiary hearing and addressed by the district court, it appears that the claim has
morphed into a different claim on appeal. At the district court, Novotny argued Ney was
ineffective for *failing to object* to Worley's testimony and *not requesting a limiting
instruction under K.S.A. 60-455*. Whereas on appeal, Novotny now claims that Ney was
ineffective for *eliciting* Worley's testimony. Significantly, Novotny no longer argues that
Ney should have requested a K.S.A. 60-455 instruction.

As a general rule, claims for relief not raised before the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Of course, there are exceptions to this general rule, including: (1) that the newly asserted claim involves a pure question of law arising on proved or admitted facts and is determinative of the case; (2) that consideration of the newly asserted claim is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) that the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Here, Novotny asserts that we should consider his newly asserted claim under the second exception.

We find it significant that this was not a claim that was remanded to the district court to consider at the evidentiary hearing. Likewise, as the State points out, Novotny's K.S.A. 60-1507 counsel had an opportunity to assert this new claim either at the evidentiary hearing or in the subsequent motion to reconsider the district court's initial written decision. But neither was done. Consequently, we do not find that the resolution of this newly asserted claim is necessary to serve the ends of justice because the district court addressed the issue remanded to it, and Novotny no longer argues that trial counsel should have requested a K.S.A. 60-455 instruction.

*Alleged Pressure on Novotny Not to Testify*

In his second K.S.A. 60-1507 motion, Novotny claimed "that trial counsel was ineffective for pressuring [him] not to testify at his trial, despite his wishes to do so[.]" Likewise, the claim that Ney pressured Novotny not to testify at trial is one of the claims remanded to the district court for evidentiary hearing. So, we must determine whether the district court erred in denying this claim of ineffectiveness of trial counsel.

It is undisputed that criminal defendants have a constitutional right to testify at trial. *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200 (2012). Similarly, criminal

defendants have a constitutional right not to testify at trial. *State v. George*, 311 Kan. 693, 708, 466 P.3d 469 (2020). Unless a defendant is not represented by counsel, the decision of whether or not to testify at trial should be made after consultation with his or her attorney. See *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006). Additionally, a knowing and intelligent waiver of the right to testify can be inferred from a defendant's conduct. *State v. Breeden*, 297 Kan. 567, 586, 304 P.3d 660 (2013).

According to Novotny, had he been called as a witness he would have testified that he remembered walking with someone near Xavier Worley's apartment. He evidently does not recall who that other person was but he does recall that the other person pulled out a gun and started shooting. Novotny alleges that he would have further testified that he yelled "stop," threw his hand out to stop the shooter, and then ran away. Novotny also alleges that he later received a letter from a Donovan Thompson in which he thanked him "for not snitching" about the shooting.

A review of the record on appeal reveals that at the K.S.A. 60-1507 hearing, Novotny testified that he twice asked Ney if he could testify. Novotny claimed that Ney did not discuss trial strategy with him and that he had expected to testify at trial. According to Novotny, he felt like Ney tried to bully him. In contrast, Ney testified that he advised Novotny not to testify because he did not think he would be a good witness. Ney explained that his trial strategy was to show that Novotny was innocent.

Although Ney did not recall all the details after so many years, he testified as follows:

> "[STATE] Q. And so in the course of your conversations about whether he would testify, did he understand or at least did you tell him that ultimately it was his decision whether to testify?

8

"[TRIAL COUNSEL] A. I don't want to get into what he understood, but I certainly told him that it was something that we had to decide.

"Q. That you would give him your counsel, your recommendation, which you have already shared but, ultimately, it was going to be his decision whether to testify or not?
"A. I don't know if I would put it into those words, but we talked about the negative aspects of his testimony."

Ney further recalled that Novotny never told him that he wanted to testify before he had rested the defense's case or during the instructions conference. Ney added that if Novotny was to testify at trial, they would have spent considerable time to prepare his testimony.

We note that the trial transcript confirms that Novotny never advised the district court that he wanted to testify. The transcript reflects that during the instructions conference, the district court expressly discussed an instruction regarding Novotny's right not to testify. Throughout this discussion, Novotny remained silent. At the sentencing hearing, Novotny addressed the district court directly. In doing so, he presented his version of the facts surrounding the shooting. He finished by stating, "I tried to tell the truth, but Ney . . . didn't want it to be known." After Novotny gave his statement, the State presented victim impact statements, and the district court announced its sentence.

In ruling on the 60-1507 motion, the district court explained that Novotny "would have had nothing of substance to testify to and would have opened himself up needlessly to cross-examination by the State." The district court found that Novotny's testimony would have also contradicted his claims about his lack of knowledge regarding the crime. The district court concluded that Ney's actions were reasonable and that no evidence showed that the jury would have acquitted if Novotny had testified.

9

In *Taylor v. State*, 252 Kan. 98, 843 P.2d 682 (1992), the Kansas Supreme Court considered a K.S.A. 60-1507 movant's claim that he was prevented from testifying by his trial counsel. At his K.S.A. 60-1507 hearing, the defendant presented the testimony of several friends and family members who claimed he told his attorney that he wanted to testify. On the other hand, trial counsel testified that he had advised his client of his rights, and it was the defendant who ultimately decided to follow his attorney's advice not to testify. On appeal, our Supreme Court found that there was substantial competent evidence in the record to support the district court's finding that trial counsel was not ineffective. 252 Kan. at 104. Similarly, several panels of our court have also considered claims of ineffective assistance of trial counsel for allegedly preventing defendants from testifying.

Several years later, in *Jamison v. State*, No. 95,371, 2007 WL 4105248 (Kan. App. 2007) (unpublished opinion), a criminal defendant filed a K.S.A. 60-1507 motion claiming that trial counsel refused to let him testify. However, Jamison did not speak up during trial about his alleged desire to testify. At the K.S.A. 60-1507 hearing, trial counsel testified that she always reviewed a client's rights during their first meeting. Ultimately, the district court found trial counsel's testimony to be credible and denied the K.S.A. 60-1507 motion. On appeal, a panel of our court found that there was substantial competent evidence in the record to support the district court's finding that trial counsel did not deprive the defendant of his right to testify at trial. 2007 WL 4105248, at *2.

More recently, in *Talbert v. State*, No. 105,469, 2011 WL 4717368 (Kan. App. 2011) (unpublished opinion), a criminal defendant alleged that his trial counsel was ineffective for not advising him that the decision whether to testify at trial was his and not his attorney's decision. At his K.S.A. 60-1507 hearing, trial counsel testified that he always told his clients that whether to testify at trial is their decision and that he had told Talbert the same thing. As a result, the district court denied the K.S.A. 60-1507 motion.

On appeal, a panel of this court found that that there was substantial competent evidence to support the district court's findings and conclusions. 2011 WL 4717368, at *4.

In this case, we also find substantial competent evidence in the record that—if believed—supports the district court's decision that Ney did not force or unduly pressure Novotny not to testify at trial. At the K.S.A. 60-1507 hearing, Ney testified regarding his trial strategy to show that someone other than Novotny had committed the crimes. Likewise, he testified that he discussed with Novotny whether he should testify and advised him that it was his opinion that he should not testify.

Further, we find nothing in the record to show that Novotny brought his purported desire to testify to the attention of the district court at any point prior to the defense resting, at the instruction conference at which the issue of him not testifying was discussed, or at any other point prior to the rendering of the verdict. Rather, the record reveals that Novotny did not assert this claim until after he was convicted.

Under these circumstances, we conclude that the district court did not err in finding that Ney's representation of Novotny was not deficient. The district court found Ney's testimony to be credible and concluded that he never pressured his client not to testify. Instead, he convinced him not to testify as part of the trial strategy to argue that someone else committed the crimes. Moreover, the district court found Ney to be credible in testifying about his concern that Novotny would not be a good witness and that by testifying, he would have needlessly opened himself up to cross-examination by the State.

We also find that the district court did not err in determining that Novotny failed to show prejudice even if there had been a deficiency in Ney's representation. The jury was well aware of the fact that Novotny claimed someone else was the shooter and his testimony would have added little—if anything—to his defense. In addition, there was other evidence in the record that potentially pointed to other shooters.

11

In particular, Shannon Williams suggested in her testimony that Novotny was not the shooter and that she had told police that a man named Thomas Wilson had robbed her at gun point using the same caliber gun as the one used in the commission of these crimes. She suggested in her testimony that the gun may have possibly belonged to another man named Phillip Caldwell.

Additionally, Brandi Williams testified that Caldwell at least fit the physical description of the shooter. She also identified Caldwell as being among the group of men at her house on the day of the shooting. Also, Shannon Williams testified that right after the shooting, Caldwell hid a gun under Brandi Williams' clothes in Brandi's closet.

Furthermore, Ney pointed to the evidence of other possible shooters during his closing argument. Likewise, he also pointed to evidence regarding the reluctance of the victim who survived to identify Novotny in the days following the shooting. Ney also suggested that Novotny was elsewhere at the time the crime was committed. In particular, he referred to the testimony of Shamako Dean indicating that Novotny was home by 9:55 p.m. As a result, Ney argued that it would "almost be an impossibility" for Novotny to be at the scene of the shooting, which occurred around 9:40 p.m.

Hence, we find substantial competent evidence in the record upon which the district court could reasonably conclude that Ney did not unduly pressure Novotny not to testify but instead made a wise strategic decision to recommend that to his client that he not testify. Likewise, we find substantial competent evidence in the record upon which the district court could reasonably conclude that Novotny was not prejudiced by the decision not to testify under these circumstances. As such, we do not find that the district court erred in finding that Novotny's claim fails under both prongs of the *Strickland* test.

12

*Failure to Request a Competency Evaluation*

The next claim asserted by Novotny is that his trial counsel was ineffective for failing to request a competency evaluation. Although this is another claim that appears to have morphed from the time Novotny filed his second K.S.A. 60-1507 motion until now, the record reflects that Novotny claimed in his motion that trial counsel was ineffective for failing to move for a competency evaluation prior to trial. We also note that the issue of trial counsel's failure to request a mental competency evaluation prior to trial was one of the claims remanded to the district court for an evidentiary hearing.

In Kansas, a person is "'incompetent to stand trial'" when, because of mental illness or defect, the person is unable: "(1) To understand the nature and purpose of the proceedings against such person; or (2) to make or assist in making such person's defense." K.S.A. 2022 Supp. 22-3301(a). The district court measures the evidence on competency by a preponderance of the evidence. Defendants are presumed competent. *State v. Mitchell*, 317 Kan. 792, 794, 539 P.3d 218 (2023). However, a competency evaluation may be requested at any point after charges are filed and before the pronouncement of the sentence. K.S.A. 2022 Supp. 22-3302(1).

In its amended written decision, the district court found that "[t]he correct procedure for evaluating [Novotny's] mental capacity was followed by each [defense] attorney, therefore there has been no evidence that their representation fell below the standard of reasonableness." As a result, the district court found that Novotny had failed to establish the first prong of the *Strickland* test. The district court also found that "there is no evidence the trial would have resulted in a different outcome." Consequently, the district court concluded that "neither prong of the two-part test has been met and [Novotny's] claim is denied on this issue."

13

In reaching this decision, the district court found that trial counsel had requested a "Larned PSI" evaluation of Novotny's mental competency under K.S.A. 22-3429. That statute allows the district court to, as part of the presentence investigation, order a "mental examination, evaluation and report" of a defendant at a state security hospital. K.S.A. 22-3429. As the district court found, "[t]hese evaluations were done immediately after the family believes [Novotny's] health had declined." Moreover, the district court pointed out that Novotny was evaluated twice and found that "[b]oth times the medical professionals determined [he] met the standards for legal competency."

The Larned evaluation report showed that Novotny did not need inpatient psychiatric care and that standard prison housing was appropriate. After Ney withdrew as Novotny's attorney, the attorney appointed to represent him during the sentencing phase requested a full competency evaluation. This evaluation was completed by ComCare and again Novotny was found to be competent.

At the K.S.A. 60-1507 hearing, there was conflicting evidence presented regarding Novotny's competence to stand trial. Novotny's sister testified that when she visited her brother before and during trial, she observed that "mentally he's not here." According to his sister, Novotny's mental status gradually got worse during the year he was in jail awaiting trial and that he became more paranoid during trial. She also testified that Novotny's personality changed because of a brain injury he suffered as a result of a fall as a child.

Novotny testified that he remembered bits and pieces of the trial, but he felt like he was in a "fog" the whole time. He claimed that he started hearing voices before trial, had an inconsistent appetite, walked around in his cell for days and then slept for days, and would laugh uncontrollably, and get extremely paranoid. He also claimed that he was taking medication at the time of his trial but had eventually stopped. At the time of the

14

K.S.A. 60-1507 hearing, Novotny testified that he was doing fine because he had been taking "coping" classes at Larned State Hospital.

The attorney who represented Novotny at sentencing testified that he seemed like a completely different person between his first visit with him in the spring of 2007 and his initial appointment with him after being appointed to serve as his sentencing counsel in December 2008. He testified that Ney had conveyed to him that Novotny's mental health had declined during and subsequent to trial. This led Ney to seek the Larned evaluation request to determine appropriate housing.

On the other hand, the Larned evaluation completed following the trial found that Novotny did not need inpatient care and that standard prison housing was appropriate. The Larned report further found that Novotny did not believe he had a mental illness at the time of his evaluation. Similarly, the ComCare competency evaluation performed prior to sentencing found that Novotny was competent.

At the K.S.A. 60-1507 hearing, Ney testified that he believed that Novotny had mental health problems and that he often had to repeat things to him that they had discussed. Ney also indicated that Novotny went off on tangents at times. Nevertheless, Ney testified that based on his lengthy experience as a criminal defense attorney, he never believed that Novotny was incompetent to stand trial. He explained that over the years, he had experience representing dozens of other clients who had been declared incompetent.

In addition, Ney explained that he still did not believe that Novotny was incompetent when he requested the Larned evaluation. He explained that it was his belief that Novotny never reached a point where he could not assist with his own defense or that he did not understand what was happening around him. Ney testified that Novotny had the ability to discuss things happening at trial and that he was able to ask questions.

In *State v. Davis*, 277 Kan. 309, 323, 85 P.3d 1164 (2004), the Kansas Supreme Court found that trial counsel's failure to seek pretrial evaluation of defendant's competency to stand trial constituted ineffective assistance. Davis had a long history of multiple hospitalizations and treatment for severe mental health issues including psychosis, disorganized/aggressive behavior, schizophrenia, bipolar disorder, schizophrenia disorder, antisocial personality disorder, and borderline intellectual functioning. Initially, the district court found that Davis was incompetent to stand trial and committed him to Larned State Security Hospital. Eventually, Davis was found to be competent to stand trial, and the district court ordered the proceedings to resume.

In his direct appeal, Davis argued his trial counsel provided ineffective assistance for failing to request an additional pretrial competency evaluation after he sent his attorney several incoherent letters that reflected confusion about his defense. Our Supreme Court agreed and held that trial counsel was ineffective for failing to request a competency hearing. 277 Kan. at 323. In reaching this conclusion, the court reasoned that because trial counsel had evidence of Davis' mental incompetence, the attorney was deficient in failing to seek another competency hearing. 277 Kan. at 323. In fact, Davis' trial counsel admitted that he should have requested another competency evaluation before trial.

Here, a review of the record on appeal reveals that the evidence presented at the K.S.A. 60-1507 hearing was conflicting. There were no medical or mental health records admitted into evidence suggesting that Novotny was unable to understand the nature and purpose of the criminal proceedings or that he was unable to assist in his defense. Even after Novotny was evaluated prior to sentencing by Larned State Hospital and ComCare, he was not found to be mentally incompetent. Furthermore, Novotny did not present any expert testimony at the K.S.A. 60-1507 hearing to suggest that he was not mentally competent to stand trial.

16

Additionally, Ney testified that he was able to communicate with Novotny regarding the progress of his case. In doing so, he never felt that his client was unable to assist in his defense. Although he recognized that Novotny had some mental health issues, he never felt that he was incompetent or that an evaluation was necessary to determine whether he was competent to stand trial. As indicated above, Ney was a very experienced criminal defense attorney and had represented dozens of clients who were mentally incompetent over the years.

Based on our review of the record, we find substantial competent evidence to support the district court's decision that Novotny had failed to meet either prong of the *Strickland* test regarding this claim. There is evidence in the record that—if believed—supports Ney's decision not to request a mental competency hearing prior to or during trial and we are not reweigh evidence. *Khalil-Alsalaami*, 313 Kan. at 486-87. Likewise, Novotny has not shown that the outcome of his trial would have been different but for the alleged deficiency of his trial counsel.

*References to Nickname at Trial*

In his K.S.A. 60-1507 motion, Novotny claimed that trial counsel was ineffective for failing to object to the prosecutor referring to him by his nickname—"Loco"—during the trial. The record reflects that this claim was considered and denied by district court. On appeal, Novotny modifies his argument and now argues that the district court should have used a prosecutorial error analysis in determining whether he was prejudiced by the references to his nickname at trial. As the State points out, Novotny is attempting to convert this claim from one of ineffective assistance of counsel to one of prosecutorial error.

It is clear from the record that the claim of prosecutorial error arising out of the use of Novotny's nickname at trial was not asserted on direct appeal nor was it presented

17

to the district court in his K.S.A. 60-1507 motions. Moreover, Novotny has shown no exceptional circumstances to justify his failure to previously assert this claim. Interestingly, Novotny raised an unrelated claim of prosecutorial error in his direct appeal, and he has failed to show why he could not have also asserted this claim at that time.

Consequently, we find that this claim has not been adequately preserved. See *State v. Raskie*, 293 Kan. 906, 912, 269 P.3d 1268 (2012) (finding additional arguments raised on appeal for why evidence was inadmissible not preserved).

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2023 Kan. S. Ct. R. at 243).

We recognize that there may be times in which it may be appropriate to review a claim of prosecutorial error in a K.S.A. 60-1507 proceeding. See *Haddock v. State*, 282 Kan. 475, 146 P.3d 187 (2006); *Hollingsworth v. State*, No. 106,357, 2012 WL 718971, at *3 (Kan. App. 2012) (unpublished opinion). But this is not one of those cases. Here, it is undisputed that Novotny did not raise this argument previously and has made no attempt to show exceptional circumstances for not doing so. See Supreme Court Rule 183(c)(3) (2023 Kan. S. Ct. R. at 243). Thus, because this argument should have been raised previously, we decline to address it in this appeal.

*Cumulative Error*

Cumulative errors when considered together may require reversal of a conviction when the totality of the circumstances establish that the defendant was substantially

prejudiced by the errors and was denied a fair trial. However, cumulative error is inapplicable when there are no errors or only a single error. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). In this case, Novotny has failed to show deficient performance by trial counsel during trial. Because no errors occurred in this case, there can be no cumulative error.

Affirmed.